OPINION
{¶ 1} John L. Mullins was convicted by a jury in the Montgomery County Court of Common Pleas of two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). The trial court sentenced him to consecutive five-year terms of imprisonment and fined him $10,000 on each count. Mullins appeals from his convictions and sentences, raising eight assignments of error. We will address them in an order that *Page 2 
We will address them in an order that facilitates our analysis.
 {¶ 2} I. "APPELLANT'S CONVICTIONS FOR GROSS SEXUAL IMPOSITION ARE BASED UPON INSUFFICIENT EVIDENCE."
 {¶ 3} In his first assignment of error, Mullins claims that his convictions were based on insufficient evidence.
 {¶ 4} "'[Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed.1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372,683 N.E.2d 1096, citing Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 5} Mullins was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(4), which provides:
 {¶ 6} `"(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * *
 {¶ 7} "(4) The other person, or one of the other persons, is less than thirteen years of age, *Page 3 
of age, whether or not the offender knows the age of that person."
 {¶ 8} "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C.2907.01(B).
 {¶ 9} According to the state's evidence, Mullins touched the private areas of two boys, C.H. and D.H., at the home of Ron and Peggy Hembree in Germantown, Ohio. D.H.'s father, Jeff, was Ron Hembree's cousin. C.H.'s father was Ron Hembree's brother. Both incidents occurred in the spring or summer of 2002, close in time to a family camping trip at a park in Zaleski, Ohio. The group included Ron and Peggy and their three children, C.H., D.H., D.H.'s sister, and Jeff. Mullins accompanied the extended family on this camping trip, and he spent the night at the Hembree home on the night before the trip and on a few other occasions in the spring and summer of 2002. During that time period, D.H. was eight years old, and C.H. was ten or eleven years old.
 {¶ 10} According to D.H.'s testimony, the incident with Mullins occurred just prior to the camping trip to Zaleski Park. On that night, he slept in the living room with C.H. and the Hembrees' sons. D.H.'s sister slept with the Hembrees' daughter in her bedroom, Ron and Peggy slept in their bedroom, and Jeff slept in the family room. D.H. testified that he fell asleep on his back on one of the recliner portions of a large sectional couch in the living room. During the night, he awoke on his stomach on a different portion of the couch. Mullins was on top of him with his hand under his stomach. D.H. stated that his jeans were unbuttoned and unzipped and that Mullins was grabbing his penis and testicles inside his underwear. D.H. told Mullins to stop, wiggled out from under him, and ran to the bathroom. D.H. stayed in the bathroom for a few *Page 4 
D.H. stayed in the bathroom for a few minutes and then went to sleep with his father in the family room. D.H. first reported the incident to an adult in February 2004 after hearing a television program about children who had been sexually abused.
 {¶ 11} C.H. testified to a similar incident also near in time to the camping trip in Zaleski. C.H. stated that he was sleeping on the sectional couch wearing thin basketball-type shorts. He awoke during the night to find Mullins lying behind him with his stomach against him. Mullins' hand was touching his penis on the outside of his shorts. C.H. testified that Mullins tried to put his hand inside his shorts. C.H. pulled Mullins' hand away, squeezing a bandage on Mullins' hand. C.H. went to the bathroom to get away from Mullins. He later returned to the opposite side of the couch. C.H. did not report the incident until questioned by relatives after D.H. reported his incident.
 {¶ 12} On appeal, Mullins argues that the state's evidence was legally insufficient because there was no evidence that he was sexually aroused or gratified by his purported actions. Whether the touching was for the purpose of sexual gratification may be inferred from the type, nature and circumstances surrounding the contact. State v. Mundy (1994),99 Ohio App.3d 275, 650 N.E.2d 502; State v. Finley, Montgomery App. No. 19654, 2004-Ohio-661, at ¶ 25. In this case, Mullins pressed his body against both boys and deliberately placed his hand on their penises while they slept. Mullins opened D.H.'s pants and went inside his underwear, and he attempted to go inside C. H.'s shorts. There was no evidence that the touching occurred for a medical or other non-sexual purpose. Based on the record, the jury could have reasonably inferred that Mullins touched the boys' genitals for purposes of sexual arousal or gratification.
 {¶ 13} The first assignment of error is overruled. *Page 5 
 {¶ 14} III. "THE TRIAL COURT ERRED IN NOT GIVING A JURY INSTRUCTION ON A DEFENDANT'S RIGHT NOT TO TESTIFY."
 {¶ 15} In his third assignment of error, Mullins argues that the trial court erred in overruling his request for a jury instruction regarding his constitutional right not to testify. The trial court rejected the request, citing Griffin v. California (1965), 380 U.S. 609,85 S.Ct. 1229, 14 L.Ed.2d 106 and commentary by the Ohio Jury Commission, with the apparent belief that such an instruction would constitute impermissible commentary on Mullins' invocation of his Fifth Amendment right not to testify.
 {¶ 16} Mullins argues that the trial court's reliance onGriffin was misplaced and that an instruction on his right not to testify was required in order for the jury to have all relevant and necessary instructions. The state agrees with Mullins that the requested instruction would not have violated Mullins' right against self-incrimination. It asserts, however, that this error was harmless because Mullins' request was not proper.
 {¶ 17} At the outset, counsel are correct that a jury instruction regarding a defendant's right not to testify does not constitute improper commentary on his failure to testify. "A trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify. Upon proper request, defendant has a right, under the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, to have the judge instruct the jury that the defendant's failure to testify cannot be considered for any purpose." State v. Fanning (1982),1 Ohio St.3d 19, 437 N.E.2d 583, paragraph one of the syllabus, following Carter v. Kentucky (1981), 450 U.S. 288, 101 S.Ct. 1112,67 L.Ed.2d 241. (We note that the commentary to 4 Ohio Jury Instructions (2006) 45, Section 405.21, which provides a *Page 6 
standard instruction regarding a defendant's failure to testify, does not cite to Fanning, Carter, or any other case subsequent to 1978.)
 {¶ 18} As made clear in Fanning, a defendant is only entitled to the special jury instruction on the defendant's failure to testify "upon proper request." The request for the instruction must "be in writing and made at the close of the evidence, or at such earlier time as the court reasonably directs to be proper." Fanning, supra, paragraph two of the syllabus; Crim.R. 30. Where a defendant fails to comply with these requirements, a trial court may properly omit an instruction that the defendant's failure to testify cannot be considered for any purpose.Fanning, 1 Ohio St.3d at 21.
 {¶ 19} In this case, Mullins' counsel orally requested a jury instruction that the defendant's failure to testify not be considered for any purpose. This request was made on the record after the jury instructions were read. (The record suggests that the request may have previously been made off the record when counsel and the court discussed the jury instructions prior to closing argument.) Mullins did not file proposed jury instructions prior to trial, and his counsel did not subsequently request the special jury instruction in writing, as required by Crim.R. 30. Consequently, Mullins did not properly request an instruction regarding his failure to testify, and the court did not err in denying his request. See Fanning, supra.
 {¶ 20} The third assignment of error is overruled.
 {¶ 21} IV. "THE TRIAL COURT ERRED IN NOT ALLOWING TRIAL COUNSEL TO PROFFER TESTIMONY OF POTENTIAL WITNESSES."
 {¶ 22} In his fourth assignment of error, Mullins claims that the trial court erred in failing to allow him to proffer the testimony of several children after the court ruled that they would not be *Page 7 
would not be required to appear at trial because they were not properly served. Mullins further asserts that the trial court's ruling that the children need not appear was erroneous.
 {¶ 23} At the conclusion of his testimony, Ron Hembree informed the court that he had just been handed a subpoena for his children to appear for the trial. After the jury had been dismissed for the day, the court and counsel questioned Hembree about the subpoena. Hembree indicated that his wife and three children (two biological sons and a step-daughter) had left the day before for West Virginia and that they were currently out-of-state. Hembree and his wife had spoken with prosecutors during the previous week and had been informed that their middle child would not be needed at the trial. The Hembrees were not informed that the children were on Mullins' witness list. Defendant's process server, Cynthia Shaeffer, testified that she and her son had attempted to serve the defendant's subpoena at the Hembrees' residence on July 1, July 2, and July 4, 2005, but were unsuccessful. There had been no attempts to serve the Hembree children prior to July 1, 2005.
 {¶ 24} In addition to testifying about the Hembree subpoena, Shaeffer also testified that she had attempted to serve a subpoena for D.H.'s siblings. Shaeffer stated that they were not at the address provided and the residence was vacant.
 {¶ 25} In ruling on whether the Hembree children were required to appear, the court noted that trial had been set for March 22, 2005, and that the Hembrees had not been served at any time before the March trial date. The court further noted that defense counsel had waited until the Friday before trial — the Fourth of July weekend — to serve the subpoena on the Hembree children, and found no suggestion that the Hembrees had avoided service during the weekend. The court recognized that parties have a right to subpoena witnesses and that the witness must normally *Page 8 
subpoena witnesses and that the witness must normally move to quash the subpoena. The court found that "[Hembree's] children have not been served, his step-daughter, which he has no control [over], has not been served, they are out of the state, and in fact there has not been the three-day service necessary to have a witness appear or to file a Motion to Quash." The court thus ruled that Ron Hembree's children need not appear.
 {¶ 26} As for D.H.'s siblings, the court found that they had not been properly served. However, it permitted Mullins to issue subpoenas for them, and it indicated that it would voir dire the children, if they appeared and if necessary, to determine whether they should testify.
 {¶ 27} Mullins claims that the trial court erred in ruling that the witnesses were not properly served and need not appear. "TheSixth Amendment to the United States Constitution, and Section 10, Article I
of the Ohio Constitution, guarantees a criminal defendant the right to present witnesses on his or her own behalf and to use the power of the court to compel the attendance of those witnesses, if necessary. This right is a fundamental element of due process of law, and in plain terms is the right to present a defense. Washington v. Texas (1967),388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019; State v. Brown, 64 Ohio St.3d 649,597 N.E.2d 510, 1992-Ohio-19." State v. Brock, Montgomery App. No. 19291, 2002-Ohio-7292, at ¶ 11.
 {¶ 28} Beginning with D.H.'s siblings, Mullins' counsel informed the court at the conclusion of the state's case that the children were served through their mother, Larissa Waggoner, who had appeared that day to testify for the state. Defense counsel further indicated that some of the children were too youthful to testify and that he had determined that the older child's testimony "if given, would not augment the * * * case." Mullins' counsel thus decided not to call the older child to *Page 9 
thus decided not to call the older child to testify. Because Mullins was able to serve the children and he determined that they were not needed to testify, Mullins was not prejudiced by the trial court's prior ruling that these children had not been served.
 {¶ 29} Turning to the subpoena for Ron Hembree's children, the trial court properly concluded that Hembree's step-daughter had not been served. The subpoena was not received by her or her parent. We disagree with the trial court, however, that Hembree's biological children were not properly served through him when Shaeffer handed him the subpoena at the courthouse. Crim.R. 17, which addresses subpoenas, does not require a three-day notice period, nor do we find a Montgomery County local rule which requires such notice.
 {¶ 30} Although we concluded that Hembree's sons were served with the subpoena, we find no fault with the trial court's conclusion that they need not appear. Hembree's questions to the court about the subpoena were akin to a motion to quash, and the court, in effect, treated it as such. Absent an abuse of discretion, the trial court's decision to quash a subpoena will not be overturned. State v. Glasure, Carroll App. No. 652, 2001-Ohio-3319. Here, Hembree received a subpoena for his sons' attendance at trial after trial had begun and on the day before they were to appear. At that time, the children were out-of-state with their mother. There was no evidence that the family had avoided being served or had left Ohio to avoid testifying. Under the circumstances, the trial court reasonably concluded that enforcement of the subpoena was unreasonable.
 {¶ 31} Finally, Mullins claims that the trial court erred in denying him the opportunity to proffer the Hembree children's testimony. The court denied the request to proffer, stating that it was "[the court's] understanding under Ohio law that they've eliminated proffering testimony a long *Page 10 
proffering testimony a long period of time ago in regard to what the witness would testify." The court also expressed doubt about whether the children would have relevant testimony.
 {¶ 32} Contrary to the court's understanding, the proffering of excluded evidence is alive and well in Ohio. Evid.R. 103(A)(2) provides:
 {¶ 33} "(A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 {¶ 34} "* * *
 {¶ 35} "(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination."
 {¶ 36} "The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant."In re Walker, 162 Ohio App.3d 303, 2005-Ohio-3773, 833 N.E.2d 362, at ¶ 37.
 {¶ 37} While the trial court was mistaken as to the still existing requirement of a proffer of excluded evidence, no error resulted from the court's mistake or its refusal to permit a proffer. It is apparent from the record that, at the time he sought to proffer, Mullins had no evidence to proffer.
 {¶ 38} In discussing the subpoenas, the prosecutors stated that, based on conversations with Hembree, "there is absolutely no indication that any of these children, either the three from Mr. Ron Hembree or Larissa's three children, have any knowledge about any of this." Defense counsel responded: " * * * A witness is a person who may have been present when activity may or *Page 11 
been present when activity may or may not have occurred. For instance,if these children were all sleeping over, and we have good reason to believe that they were, * * * they would have material testimony as to whether [C.H.] or [D.H.] said anything either that night, cried out, * * * talked to them later, something like that. Sure they're not bringin' `em in because nothing happened to them, but that's not the only reason a person is a witness for pete['s] sakes." (Emphasis ours.)
 {¶ 39} Based on this exchange, we can only conclude that, at the time he sought to proffer, Mullins did not know what, if anything, the children would say. As such, he cannot claim he was denied the right to proffer evidence.
 {¶ 40} Here, the trial court had previously ruled that the Hembree boys did not need to appear due to defects in subpoenaing the children. Consequently, in order to present the boys' testimony, defense counsel would have needed to request and be granted a continuance of the trial. After the court ruled that the boys did not need to appear, Mullins' counsel asked for a continuance of the trial. The court denied that request, reasoning:
 {¶ 41} "Number one, the Court * * * finds that the request for the production of these witnesses should have been done a lot * * * longer than a couple of days prior to trial. The representation that has been made here, and if the children do testify, is they don't know anything about this. I see absolutely no reason to continue the trial in the middle of trial because I've got a Jury of twelve individuals. I have lost one over a lunch hour and if I continue this for any further period of time, I'm going to end up with * * * no Jurors or eleven Jurors and have to declare a mistrial and I'm not going to do that. So your Motion for Continuance at this period of time is overruled. Your Motion in regard to the production of these witnesses, the Court finds * * * was not timely made and as such overrules the same for the record." *Page 12 
for the record."
 {¶ 42} Mullins has not appealed the denial of his motion for a continuance. Even if he had, we would find no abuse of discretion in the trial court's refusal to continue the trial. When the court considers a motion for a continuance, it must consider the length of the requested continuance; any prior continuances; the inconvenience to the litigants, witnesses, opposing counsel and the court; reasons for the delay; whether the defendant contributed to the delay; and other relevant factors. State v. Perkins, Montgomery App. No. 21515, 2007-Ohio-136, at ¶ 19. A trial court abuses its discretion when its decision is the product of "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Medical Bd. (1993), 66 Ohio St.3d 619,621, 66 N.E.2d 748.
 {¶ 43} The trial court's ruling was based on the timing of the request, i.e., the middle of the state's case; its conclusion that the defense had not been diligent in obtaining the Hembrees' appearance; and that the record did not reflect that the children were aware of what had happened. The court previously noted that the trial had been postponed twice — from September 27, 2004, and March 21, 2005.
 {¶ 44} Because Mullins had no evidence to proffer and because the court acted within its discretion in refusing a continuance, there is no merit to this assignment of error.
 {¶ 45} The fourth assignment of error is overruled.
 {¶ 46} II. "APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION X OF THE OHIO CONSTITUTION."
 {¶ 47} In his second assignment of error, Mullins claims that his counsel rendered *Page 13 
ineffective assistance.
 {¶ 48} In order to demonstrate ineffective assistance of counsel, Mullins must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. "Reversal of a conviction for ineffective assistance of counsel `requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" State v. Hand,107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d. 151, at ¶ 199. Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland,466 U.S at 694; Bradley, 42 Ohio St.3d at 142.
 {¶ 49} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. SeeStrickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.;State v. Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 50} On appeal, Mullins states that his trial counsel was ineffective in five respects: (1) trial counsel failed to locate and interview potential witnesses prior to trial; (2) trial counsel failed to subpoena said witnesses for trial; (3) trial counsel failed to adequately advise the trial court of what said witnesses might testify to; (4) trial counsel was not prepared to go forward with *Page 14 
was not prepared to go forward with trial despite numerous prior continuances; and (5) trial counsel did not request in writing, pursuant to Crim.R. 30, a jury instruction regarding defendant not testifying. Mullins states, generally, that these deficiencies resulted in undue prejudice to him.
 {¶ 51} The transcript does not reveal that Mullins' trial counsel was unprepared for trial. Counsel was familiar with the facts and potential witnesses, he conducted adequate cross-examination, and made appropriate objections and motions throughout the trial. Moreover, Mullins' counsel requested permission to proffer the Hembree children's testimony, and cannot be faulted for the trial court's denial of his request to do so.
 {¶ 52} The primary thrust of Mullins' assignment relates to his counsel's alleged failure to locate, interview, and secure the presence of defense witnesses at trial . Although Mullins does not identify any particular individuals, we infer that he is referring to Hembree's children. Although Mullins has previously asserted that the Hembree children had relevant testimony, the record does not reveal what their testimony — or any other defense witnesses' testimony — would have been. Consequently, we cannot conclude that there is a reasonable probability that, but for counsel's failure to secure these witnesses, the result of the proceeding would have been different. To the extent that his counsel's alleged ineffectiveness may have been established through evidence outside of the record, the proper avenue would have been a petition for post-conviction relief.
 {¶ 53} Finally, Mullins claims that his counsel was ineffective by failing to request an instruction that his failure to testify may not be considered for any purpose. As stated above, upon proper request, a defendant has a constitutional right to have a jury instruction that the defendant's failure to testify cannot be considered for any purpose.Fanning, supra. We therefore agree with *Page 15 
supra. We therefore agree with Mullins that his counsel's failure to request such an instruction fell below an objective standard of reasonableness.
 {¶ 54} Based on the record, however, we cannot conclude that there is a reasonable probability that the outcome of the trial would have been different. The prosecutor made no improper reference to Mullins' failure to testify, and the jury was properly instructed that Mullins was presumed innocent until his guilt was established beyond a reasonable doubt. Mullins' convictions turned on the jury's determination of D.H.'s and C.H.'s credibility. There is no suggestion in the record that the jury improperly considered Mullins' failure to testify. We note that the supreme court in Fanning affirmed the defendant's conviction even though it determined that the defendant would have been entitled to the instruction had it been properly requested.
 {¶ 55} The second assignment of error is overruled.
 {¶ 56} v. "APPELLANT WAS DEPRIVED OF A FAIR TRIAL DUE TO CUMULATIVE ERRORS."
 {¶ 57} Under Mullins' fifth assignment of error, he argues that the cumulative weight of the errors presented in his second, third, and fourth assignments of error denied him a fair trial. As discussed above, Mullins' trial was not without error. However, none of the errors that we have identified were prejudicial to him. Although the Supreme Court of Ohio has stated that numerous harmless errors may cumulatively deprive a defendant of a fair trial and thus may warrant the reversal of his conviction, State v. DeMarco (1987), 31 Ohio St.3d 191,509 N.E.2d 1256, paragraph two of the syllabus, upon a complete review of the record, we cannot conclude that prejudicial error exists in this case.
 {¶ 58} The fifth assignment of error is overruled. *Page 16 
 {¶ 59} VI. "THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES."
 {¶ 60} VII. "THE TRIAL COURT ERRED IN IMPOSING A MAXIMUM SENTENCE FOR EACH GROSS SEXUAL IMPOSITION CONVICTION."
 {¶ 61} In his sixth and seventh assignments of error, Mullins claims that the court's imposition of maximum and consecutive sentences was unconstitutional and that the matter should be remanded for resentencing, pursuant to State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, and State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1. We agree.
 {¶ 62} The sixth and seventh assignments of error are sustained.
 {¶ 63} VIII. "THE TRIAL COURT ERRED IN IMPOSING A MAXIMUM FINE OF $10,000 FOR EACH GROSS SEXUAL IMPOSITION CONVICTION."
 {¶ 64} Under his eighth assignment of error, Mullins challenges the trial court's imposition of a $10,000 fine for each gross sexual imposition conviction. He argues that he does not have a present or future ability to pay a fine. Mullins' appellate counsel notes that he was appointed to represent Mullins due to his indigent status.
 {¶ 65} R.C. 2929.18(A)(3) authorizes a fine up to $10,000 for a felony of the third degree. Before imposing a financial sanction under R.C.2929.18, the trial court must consider the offender's present and future ability to pay the amount of the fine. R.C. 2929.19(B)(6). The trial court is not required to hold a hearing on the issue of the financial sanctions, there are no express factors that the court must take into consideration, and no express findings must be made on the record.State v. Culver, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 57. "The record should, however, contain `evidence that the trial court considered the offender's present *Page 17 
that the trial court considered the offender's present and future ability to pay before imposing the sanction of restitution.'" Id., citing State v. Robinson, Hancock App. No. 5-04-12, 2004-Ohio-5346, at ¶ 17.
 {¶ 66} As we noted in Culver, "[w]e have previously upheld financial sanctions where the record includes documentation of a defendant's financial affairs, including a presentence investigation report, and the trial court indicates that it has considered the information in the report for sentencing purposes." Id. at ¶ 58. Here, Mullins' education, employment history, and age were documented in his presentence investigation report, which the trial court stated it had considered.. The report indicated that Mullins was 44 years old and had been employed as a ceramic tile installer for several years prior to his convictions, and had been employed in the restaurant business between 1983 and 2002. Although the report does not reflect Mullins' wages, assets, or liabilities, we find no error, based on the record, in the court's imposition of the fines.
 {¶ 67} As stated, supra, this matter must be remanded for resentencing in light of our disposition of Mullins' sixth and seventh assignments of error. At that time, the trial court must also re-address the imposition of any fines. Mullins may raise the issue of his present and future ability to pay any fines upon remand.
 {¶ 68} The eighth assignment of error is overruled.
 {¶ 69} The sentence will be reversed and the matter will be remanded for resentencing. In all other respects, the judgment will be affirmed.
BROGAN, J. and GRADY, J., concur.
 Copies mailed to: *Page 18 
R. Lynn Nothstine
David R. Miles
 Hon. Michael T. Hall, Administrative Judge *Page 1