[Cite as *State v. Robinson*, 2020-Ohio-4880.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 1-19-79

    v.

JOHN S. ROBINSON,                      **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2018 0191

**Judgment Affirmed**

Date of Decision:   October 13, 2020

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, John S. Robinson ("Robinson"), appeals the November 15, 2019 judgment of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} Just before midnight on May 2, 2018, a Ford F-350 pickup truck driven by Robinson entered northbound traffic on I-75 near Beaverdam, Ohio via an exit ramp. After leaving the exit ramp and entering the main travel lanes, Robinson's southbound pickup truck collided head-on with a northbound Ford Explorer driven by Richard Watson. At the time, Watson, his wife, Deena Frye, and their children, Colby, Conner, Chlo'ee, and Christopher, were returning home to Michigan from a family vacation in Florida. While Watson escaped the crash with relatively minor injuries, the rest of his family was more severely injured—none more seriously than Christopher, who ultimately died from multiple blunt force injuries of the chest and abdomen. Law enforcement officers responding to the crash detected the odor of alcohol on Robinson's breath and noted that Robinson exhibited several indicators of impairment, including bloodshot eyes and slurred speech. Based on these observations, law enforcement officers obtained a search warrant to collect samples of Robinson's blood. Subsequent testing of Robinson's blood revealed that Robinson had a blood alcohol concentration of .13 grams of alcohol per 100 milliliters of whole blood.

{¶3} On June 13, 2018, Robinson was indicted on seven counts: Count One of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), a second-degree felony; Count Two of operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor; Count Three of operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(b), a first-degree misdemeanor; and Counts Four through Seven of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), third-degree felonies. (Doc. No. 4). On June 25, 2018, Robinson appeared for arraignment and pleaded not guilty to the counts of the indictment. (Doc. No. 13).

{¶4} The case proceeded to a jury trial on November 12-14, 2019. On November 14, 2019, the jury found Robinson guilty on all seven counts of the indictment. (Doc. Nos. 191, 192, 193, 194, 195, 196, 197). After accepting the jury's verdicts, the trial court proceeded immediately to sentencing. First, the trial court determined that Counts Two and Three merged for purposes of sentencing. (Doc. No. 200). The State elected to sentence Robinson on Count Three. (*Id.*). The trial court then sentenced Robinson as follows: 8 years in prison on Count One; 180 days in prison on Count Three; 60 months in prison on each of Counts Four and Seven; and 54 months in prison on each of Counts Five and Six. (*Id.*). Finally, the trial court ordered that all of these terms of imprisonment be served consecutively

to each other for an aggregate term of 27 years and 6 months in prison. (*Id.*). The trial court filed its judgment entry of sentence on November 15, 2019. (*Id.*).

{¶5} On December 13, 2019, Robinson filed a notice of appeal. (Doc. No. 208). He raises three assignments of error for our review.

**Assignment of Error No. I**

**Appellant's constitutional right to the effective assistance of counsel was violated when counsel failed to challenge the admissibility of the blood-alcohol test results.**

{¶6} In his first assignment of error, Robinson argues that his trial counsel was ineffective for failing to challenge the admissibility of the blood test results. Robinson argues that because his blood was drawn more than three hours after the collision, the test results were inadmissible to prove that he violated R.C. 4511.19(A)(1)(b)—a so-called "per se" OVI. (Appellant's Brief at 9-10). He contends that his trial counsel should have at least requested that the trial court instruct the jury that the test results could be used to prove a violation of R.C. 4511.19(A)(1)(a), a so-called "under-the-influence" OVI, but that they could not be used to prove a per se OVI. (*See id.* at 8-10). Robinson maintains that he was prejudiced because he "would not have been convicted of the per se OVI in Count Three if the blood-alcohol evidence was properly limited" and because "the easy conviction on the per se OVI was likely to influence the jury on the other counts * * *." (*Id.* at 10-11).

**{¶7}** "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show that counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

**{¶8}** Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

{¶9} In this case, to convict Robinson of each of the seven counts with which he was charged, the State was required to prove that Robinson violated R.C. 4511.19(A). To convict Robinson of aggravated vehicular homicide, the State had to show that Robinson caused the death of another "[a]s the proximate result of committing a violation of [R.C. 4511.19(A)] * * *." R.C. 2903.06(A)(1)(a). Similarly, to convict Robinson of each count of aggravated vehicular assault, the State had to prove that Robinson caused serious physical harm to another "[a]s the proximate result of committing a violation of [R.C. 4511.19(A)] * * *." R.C. 2903.08(A)(1)(a). Finally, Robinson was also separately charged with violations of R.C. 4511.19(A)(1)(a), an under-the-influence OVI, and R.C. 4511.19(A)(1)(b), a per se OVI. To convict Robinson of an under-the-influence OVI, the State had to demonstrate that Robinson was "under the influence of alcohol" at the time he was operating his truck. R.C. 4511.19(A)(1)(a). On the other hand, to convict Robinson of a per se OVI, the State needed to show only that Robinson had "a concentration of eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in [his] whole blood" when he was operating his truck. R.C. 4511.19(A)(1)(b).

-6-

{¶10} R.C. 4511.19 expressly allows for the admission of blood test results in prosecutions for violations of R.C. 4511.19(A)(1)(a) or 4511.19(A)(1)(b), provided that certain guidelines are followed during the collection and testing of blood samples. *See* R.C. 4511.19(D). Specifically, R.C. 4511.19(D)(1)(b) provides that "[i]n any criminal prosecution * * * for a violation of [R.C. 4511.19(A)] * * *, the court may admit evidence on the concentration of alcohol * * * in the defendant's whole blood * * * at the time of the alleged violation as shown by chemical analysis of the [defendant's whole blood] withdrawn within three hours of the time of the alleged violation." Thus, R.C. 4511.19(D)(1)(b) places limitations on the admissibility of blood test results based on the temporal proximity of the blood withdrawal to the alleged violation of R.C. 4511.19(A).

{¶11} Yet, test results derived from blood that was withdrawn more than three hours after an alleged violation of R.C. 4511.19(A) are not categorically inadmissible. It is well settled that "[i]n a criminal prosecution for violation of R.C. [4511.19(A)(1)(b), a per se OVI], * * * the results of a properly administered bodily substances test may be admitted in evidence *only* if the bodily substance is withdrawn within [three] hours of the time of the alleged violation."[1] (Emphasis

---

[1] In *Lucas*, the court interpreted and applied a former version of R.C. 4511.19. In this former version, what is now R.C. 4511.19(A)(1)(b) was found at R.C. 4511.19(A)(2) and what is now R.C. 4511.19(A)(1)(a) was found at R.C. 4511.19(A)(1). In addition, this former version required that bodily substances be withdrawn within two hours of the alleged violation rather than three hours as provided by the current version of the statute.

added.) *Newark v. Lucas*, 40 Ohio St.3d 100 (1988), paragraph one of the syllabus. However, "a blood sample taken outside the time frame set out in R.C. 4511.19(D) is admissible to prove that a person is under the influence of alcohol as proscribed by R.C. 4511.19(A)(1)(a) * * *, provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered." *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, ¶ 19; *see Lucas* at paragraph two of the syllabus. Therefore, the admissibility of test results of belatedly drawn blood depends on the type of OVI that the results are being offered to prove, i.e., whether the results are being offered to prove an under-the-influence OVI or a per se OVI, the particular circumstances of the blood draw and subsequent testing, and the availability of expert testimony.

{¶12} Here, there is no dispute that Robinson's blood was withdrawn more than three hours after the alleged violations of R.C. 4511.19(A). Robinson's truck collided with Watson's vehicle at approximately 11:45 p.m. on May 2, 2018. (Nov. 12-14, 2019 Tr., Vol. I, at 281-282); (Nov. 12-14, 2019 Tr., Vol. II, at 321, 367); (State's Ex. 48). His blood was not withdrawn until 3:41 a.m. the following day. (Nov. 12-14, 2019 Tr., Vol. II, at 382-383); (State's Exs. 46, 47). Thus, nearly four hours passed between the time of the alleged offenses and the time that Robinson's blood was collected. Because Robinson's blood was not drawn within the three-hour window set forth in R.C. 4511.19(D), the test results should not have been

admitted to prove that Robinson committed a per se OVI. *Lucas* at paragraph one of the syllabus. Furthermore, although the test results were not necessarily inadmissible to show that Robinson committed an under-the-influence OVI, their admissibility for this purpose should have depended on whether the State could offer expert testimony as well as proof of substantial compliance with R.C. 4511.19(D)'s administrative requirements. *Hassler* at ¶ 19.

{¶13} However, while it would likely have been prudent for Robinson's trial counsel to contest the admissibility of the blood test results, we need not determine whether Robinson's trial counsel's failure to do so constituted unreasonable or deficient performance. Even assuming that Robinson's trial counsel's performance was unreasonable or deficient under the circumstances, because the State presented considerable additional evidence that Robinson was under the influence of alcohol, Robinson has failed to establish that, but for his trial counsel's performance, there is a reasonable probability that the outcome of his trial would have been different.

{¶14} At trial, the State presented several witnesses who testified both to the amount of alcohol that Robinson consumed on the evening of May 2, 2018 and to his behavior in the moments immediately before the collision and immediately after. The State established that Robinson entered Vino Bellissimo, a bar and restaurant in Lima, Ohio, at approximately 5:03 p.m. on the evening of May 2, 2018. (Nov. 12-14, 2019 Tr., Vol. I, at 234-235); (State's Ex. 6). Ashley Hartman ("Hartman"),

who was working as a bartender at Vino Bellissimo, testified that Robinson consumed four full servings of beer during his visit. (Nov. 12-14, 2019 Tr., Vol. I, at 236-237). Three of these servings were 10-ounce pours of Dogfish Head 120 Minute IPA, which, according to Hartman, contained approximately 18 percent alcohol by volume. (*Id.* at 242-243); (State's Exs. 5, 6). The fourth serving was a 10-ounce pour of a beer called "Dick Kicker Malt Liquor," which Hartman estimated as containing 14 percent alcohol by volume. (Nov. 12-14, 2019 Tr., Vol. I, at 240-241); (State's Exs. 5, 6). Hartman testified that Robinson also consumed one small sample of a high-alcohol-by-volume beer. (Nov. 12-14, 2019 Tr., Vol. I, at 236); (State's Ex. 6). Security camera footage from the evening of May 2, 2018, shows that Robinson finished his final beer at approximately 6:34 p.m. and left Vino Bellissimo at approximately 6:51 p.m. (State's Ex. 6).

{¶15} After leaving Vino Bellissimo, Robinson saw a movie at a nearby theater. (State's Ex. 64). After the movie, Robinson drove to Thirsty's, a bar and restaurant in Beaverdam, where he arrived shortly after 9:30 p.m. (State's Ex. 48). Ashlee Plaugher ("Plaugher"), who was working as a bartender at Thirsty's, testified that Robinson drank three bottles of Roebling, a "vanilla espresso import beer," during his visit. (Nov. 12-14, 2019 Tr., Vol. I, at 272-273); (State's Ex. 7). Plaugher stated that Roebling comes in either a 12-ounce bottle or a 16-ounce bottle, though she was not certain which, and that it contains 7.8 percent alcohol by volume. (Nov.

12-14, 2019 Tr., Vol. I, at 273). Plaugher testified that Robinson's stay at Thirsty's lasted no more than two hours, and other evidence supports that Robinson began driving away from Thirsty's at approximately 11:43 p.m. (*Id.* at 279); (State's Ex. 48).

{¶16} Chelsey Crawford ("Crawford") testified that on the night of May 2, 2018, she was driving on I-75 from Lima to Beaverdam. (Nov. 12-14, 2019 Tr., Vol. I, at 281-282). She stated that, at approximately 11:45 p.m., she was exiting I-75 at the Beaverdam exit when she saw a "heavy duty" Ford F-350 pickup truck "turn onto the exit ramp the wrong way" ahead of her. (*Id.* at 282-283). Crawford testified that as soon as she realized that the pickup truck was driving straight toward her, she flashed her high-beams repeatedly and "lay[ed] on [her] horn." (*Id.* at 284-285). However, according to Crawford, she did not see anything that indicated that the driver of the truck saw or reacted to her warning signals. (*Id.* at 285-286). Crawford testified that as the truck continued driving toward her down the exit ramp, she realized that it was not going to stop. (*Id.* at 286). As a result, Crawford was forced to veer off to the side of the exit ramp to avoid colliding with the truck. (*Id.*). Crawford testified that, as far as she could tell, the driver of the truck did not react when she veered off of the ramp. (*Id.*). She stated that she watched in her rearview mirror as the truck entered northbound traffic on I-75 and struck another vehicle. (*Id.* at 288). Crawford did not observe any illumination of the truck's brake

lights or any other indication that the driver of the truck realized that he was driving the wrong way. (*Id.*).

{¶17} Trooper Michael Kinsinger ("Trooper Kinsinger"), who responded to the scene of the crash between 11:45 p.m. and 11:50 p.m., testified that when he first made contact with Robinson, Robinson was outside of his truck and leaning against it. (Nov. 12-14, 2019 Tr., Vol. II, at 316). Trooper Kinsinger stated that when he encountered Robinson, he "detect[ed] an odor of alcoholic beverage upon his breath." (*Id.* at 318). After this initial encounter, Robinson was moved to the front seat of Trooper Kinsinger's patrol vehicle, where, according to Trooper Kinsinger, "the odor of alcohol became more present upon [Robinson's] breath. Became stronger." (*Id.*). Trooper Kinsinger testified that he also noticed that Robinson's eyes were bloodshot, that he was unsteady on his feet, and that he was slurring his speech—all of which suggested to Trooper Kinsinger that Robinson was impaired. (*Id.* at 318-319, 322). Trooper Kinsinger further testified that he took photographs of the signage posted around the exit ramp that Robinson used to enter I-75. (*Id.* at 331). These photographs reflect that the exit ramp was flanked on both sides by unobstructed, highly reflective signs reading "Do Not Enter" and "Wrong Way." (State's Exs. 22-26).

{¶18} Sergeant Steven Posada ("Sergeant Posada"), who responded to the crash around midnight, testified that when he spoke to Robinson at the scene, he

smelled the odor of alcohol emanating from Robinson and observed that Robinson was slurring his words. (Nov. 12-14, 2019 Tr., Vol. II, at 370, 384-385). In addition, Sergeant Posada testified that wrong-way driving is itself typically "a huge sign of impairment." (*Id.* at 375).

{¶19} Finally, Joshua Schlosser ("Schlosser") testified that he received a phone call from Robinson just before midnight on May 2, 2018. (*Id.* at 401). The truck Robinson was driving on May 2, 2018, was registered in Schlosser's wife's name, and Robinson was in the process of purchasing it. (*Id.* at 390). Schlosser testified that when he answered the phone, Robinson "frantically started saying, 'Mayday, Mayday, Mayday. I've been in an accident, hit head on, possible fatalities.'" (*Id.* at 401). Schlosser stated that Robinson was "slurring, * * * sounded intoxicated or not of his right mind." (*Id.* at 403).

{¶20} To summarize, the State established that, in a period of less than seven hours, Robinson consumed over 40 ounces of extraordinarily potent beer as well as 36-48 ounces of a beer that, while less potent, contained nearly eight percent alcohol by volume. Shortly after finishing the last of these drinks, Robinson got into his truck and turned onto an exit ramp. Robinson, who ignored or failed to see both the road signs warning him against his course of travel and Crawford's signals, then continued southward along the exit ramp until he entered northbound traffic on I-75, where he collided head-on with Watson's vehicle. Law enforcement officers

responding to the scene of the crash detected the odor of alcohol about Robinson's person. They also observed that Robinson's eyes were bloodshot and that he was unsteady on his feet. Finally, both of the officers as well as Schlosser noticed that Robinson was slurring his words.

{¶21} Although the blood test results certainly supplement this evidence, when the test results are excluded from consideration, the State's evidence still proves overwhelmingly that Robinson was under the influence of alcohol when his truck collided with Watson's vehicle on the night of May 2, 2018. Accordingly, with respect to his under-the-influence OVI conviction, Robinson has not demonstrated that he was prejudiced by his trial counsel's performance because there is not a reasonable probability that he would have been acquitted of this charge even if his trial counsel had succeeded in having the test results excluded from the case entirely.

{¶22} The same is true of Robinson's aggravated-vehicular-homicide and aggravated-vehicular-assault convictions. To convict Robinson of aggravated vehicular homicide and aggravated vehicular assault, the State was not required to prove that Robinson committed a per se OVI. Instead, the State had to prove only that Robinson committed some type of OVI, including an under-the-influence OVI. Therefore, because there is not a reasonable probability that Robinson would not have been convicted of the under-the-influence OVI and because it was enough for

the State to prove that Robinson committed an under-the-influence OVI, Robinson has likewise failed to demonstrate that there is a reasonable probability that he would not have been convicted of aggravated vehicular homicide and aggravated vehicular assault.

{¶23} Nevertheless, there is one area in which Robinson's arguments have slightly more traction. Robinson argues that "[t]here was a reasonable probability of a different outcome insofar as [he] would not have been convicted of the per se OVI in Count Three if the blood-alcohol evidence was properly limited." (Appellant's Brief at 10). He further notes that when the trial court found that his two OVI convictions merged for purposes of sentencing, the State elected to sentence on the per se OVI rather than the under-the-influence OVI. (*Id.*). Thus, he argues that he would not have been convicted of and sentenced on the per se OVI had the blood test results been excluded. (*Id.* at 10-11).

{¶24} We agree with Robinson to the extent that, had his trial counsel succeeded in excluding the blood test results, he could not and would not have been convicted of and sentenced on the per se OVI. However, because Robinson was convicted of violating both R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(b), rather than some other combination of OVIs, we cannot conclude that Robinson was prejudiced. R.C. 4511.19(A), in addition to other offenses, provides for two categories of per se OVIs based on the alcohol concentration in a person's whole

blood: "low-test" per se OVIs and "high-test" per se OVIs. R.C. 4511.19(A)(1)(b), (f). Robinson was charged with and convicted of a low-test per se OVI. R.C. 4511.19(A)(1)(b). The potential penalties for a low-test per se OVI differ from the potential penalties for a high-test per se OVI. R.C. 4511.19(G)(1)(a)(i)-(ii). However, the potential penalties for a low-test per se OVI and an under-the-influence OVI are identical. R.C. 4511.19(G)(1)(a)(i). Therefore, even if the per se OVI had been removed from the equation entirely, Robinson would still have faced the same potential penalties because he was also convicted of an under-the-influence OVI. As there is nothing in the record suggesting that Robinson was sentenced more harshly simply because the OVI for which he was sentenced was a per se OVI, the only apparent difference is that Robinson would have been sentenced for an under-the-influence OVI rather than a per se OVI. Thus, while Robinson is correct that the outcome of his case would have been different in that he could not have been convicted and sentenced on the per se OVI absent the blood test results, the outcome would have been different only in form. This does not amount to prejudice.

{¶25} Robinson's first assignment of error is overruled.

**Assignment of Error No. II**

**The trial court abused its discretion by excluding evidence of potential contributory negligence.**

{¶26} In his second assignment of error, Robinson argues that the trial court erred by granting the State's motion in limine and preventing him from testifying about Watson's driving. Specifically, Robinson argues that because "there was a reasonable probability that a jury would have found Watson's erratic driving to have been the sole proximate cause of the crash if [he] were allowed to testify on that issue," the trial court erred by preliminarily excluding this testimony. (Appellant's Brief at 13). Robinson notes that because of the trial court's ruling, he "did not testify [or] ma[ke] [an] attempt to introduce evidence regarding Watson's driving," aside from a proffer in which his trial counsel explained what testimony he might offer if given the chance to testify about Watson's driving. (*Id.* at 11).

{¶27} Before we can reach the merits of the arguments Robinson raises under his second assignment of error, we must first consider the State's claim that Robinson did not preserve his objections to the trial court's ruling on the motion in limine because he "did not obtain a final ruling on the admissibility of evidence of the victim's manner of driving." (Appellee's Brief at 12). "'"A motion in limine is defined as '[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury.'"'" *State v. Miller*, 3d Dist. Allen No. 1-18-17, 2018-Ohio-4648, ¶ 8, quoting *State v. Wild*, 2d Dist. Clark No. 2009 CA 83, 2010-Ohio-4751, ¶ 27,

quoting *State v. French*, 72 Ohio St.3d 446, 449 (1995), quoting *Black's Law Dictionary* 1013 (6th Ed.1990). "'A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling.'" *Id.*, quoting *French* at 450. "'The established rule in Ohio is that the grant or denial of a motion in limine is not a ruling on the evidence.'" *Id.*, quoting *State v. Thompson*, 3d Dist. Union Nos. 14-04-34 and 14-04-35, 2005-Ohio-2053, ¶ 26, citing *State v. Grubb*, 28 Ohio St.3d 199, 200-201 (1986). "'In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial.'" *Id.*, quoting *Defiance v. Kretz*, 60 Ohio St.3d 1, 4 (1991). Accordingly, "'[f]inality does not attach when [a motion in limine] is granted.'" *Id.*, quoting *Kretz* at 4, citing *Grubb* at 201-202.

**{¶28}** "In order to preserve for appeal any error in the trial court's resolution of a motion in limine, the objecting party must 'seek the introduction of the evidence by proffer or otherwise' at trial 'to enable the court to make a final determination as to its admissibility.'" (Emphasis deleted.) *Id.* at ¶ 9, quoting *Grubb* at paragraph two of the syllabus and citing *State v. Brown*, 38 Ohio St.3d 305 (1988), paragraph three of the syllabus. "Then, '[a]n appellate court will * * * review the correctness of the trial court's ruling on the objection rather than the ruling on the motion in limine.'" *Id.*, quoting *Wild* at ¶ 29, citing *State v. White*, 4th Dist. Gallia No.

95CA08, 1996 WL 614190, *3 (Oct. 21, 1996) and *Wray v. Herrell*, 4th Dist. Lawrence No. 93CA08, 1994 WL 64293, *6 (Feb. 24, 1994).

{¶29} After reviewing the record, we agree with the State that Robinson failed to preserve for appeal any errors in the trial court's resolution of the State's motion in limine. The State filed its motion in limine on the morning of November 12, 2019, just before jury selection began in Robinson's trial. (Doc. No. 185). In its motion in limine, the State explained that it anticipated that Robinson "may want to present testimony regarding alleged bad driving of, or unrestrained passengers in, the victim vehicle in this case." (*Id.*). The State argued that "under Ohio law, such evidence of the victim's comparative or contributory negligence is not relevant in [a] criminal case." (*Id.*). The State requested that the trial court issue an order "prohibiting the defense from presenting, at trial, any evidence of the victim's conduct that the jury might consider as contributing to injuries suffered in this case." (*Id.*).

{¶30} After jury selection, the trial court turned to the State's motion in limine. The trial court began by granting the State's motion in part and barring Robinson from presenting "any evidence of the failure to wear a seatbelt." (Nov. 12-14, 2019 Tr., Vol. I, at 179-180). The trial court then considered whether to prevent Robinson from presenting evidence about Watson's driving. Though the trial court had not yet formally granted the State's motion in its entirety and

prohibited Robinson from testifying about Watson's driving, it is evident that Robinson's trial counsel expected such a ruling from the trial court. (*See id.* at 178-179). In apparent anticipation of an unfavorable ruling on the State's motion in limine, Robinson's trial counsel acknowledged that he "ha[d] to make an attempt to introduce [evidence of Watson's driving] first and have it ruled on contemporaneously by the court" in order to preserve for appeal any errors in the trial court's resolution of the State's motion. (*Id.* at 179). To that end, Robinson made the following proffer:

> [I]t is at least apparent at this point that [Robinson] may take the stand and during the course of his testimony was desirous of explaining what he observed, including what he perceived as the driving of the victim vehicle; where it was, how it drove, if it was trying to avoid or whatever, things like that. So, to the extent that's contributory, I understand it's not allowed. But to the extent that it's informational only I think the court can instruct around that if * * * [Robinson] testifies that way. In other words, if [Robinson] would testify that Mr. Watson, driving the vehicle, was reckless or if he turned a certain direction or something like that or did or did not make evasive maneuvers, if he testifies to his observation without maybe

concluding that that's * * * part of the act * * * part of the cause of

death or injury, that he can at least testify to those facts * * *.

(*Id.* at 180-181). After the proffer, the trial court ruled that it was not "going to

allow testimony in that regard because * * * it would unduly confuse the jury on the

issues because they're not going to get a contributory negligence or comparative

negligence type of instruction." (*Id.* at 182-183). Accordingly, the trial court ruled

that "at this point the State's motion will be granted." (*Id.* at 183). However, the

trial court emphasized that it was possible that it could "reconsider" its ruling on the

State's motion in limine in light of the evidence presented at trial. (*Id.*). The trial

court never revisited its ruling.

{¶31} Despite Robinson's proffer, the trial court never made a final, definite

determination as to the admissibility of evidence relating to Watson's driving. The

trial court's statement that it was granting the State's motion "at this point" and its

commitment to reconsider its ruling if appropriate clearly indicate that the trial

court's ruling was tentative and nonfinal. Therefore, because the trial court's ruling

on the State's motion in limine was never converted into a final ruling on the

admissibility of evidence of Watson's driving, Robinson failed to preserve for

appeal any error in the trial court's resolution of the State's motion in limine.

{¶32} Moreover, even if the trial court had rendered a final ruling based on

Robinson's proffer, the form of the proffer would make it nearly impossible for this

court to review the correctness of such a ruling. Under Evid.R. 103, "[e]rror may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected * * * and * * * the substance of the evidence was made known to the court by offer * * *." Evid.R. 103(A)(2). "'"'The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant.'"'" *Brown v. Burnett*, 2d Dist. Clark No. 2019-CA-57, 2020-Ohio-297, ¶ 39, quoting *State v. Mullins*, 2d Dist. Montgomery No. 21277, 2007-Ohio-1051, ¶ 36, quoting *In re Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773, ¶ 37 (11th Dist.). "[T]he proffer must satisfy two elements. First, the offering party must explain the legal theory supporting admissibility of the testimony. Second, the offering party must demonstrate what the witness was expected to testify to and what that evidence would have proven or tended to have proven." *Elkins v. Veolia Transp., Inc.*, 10th Dist. Franklin No. 10AP-203, 2010-Ohio-5209, ¶ 31, citing *Ross v. St. Elizabeth Health Ctr.*, 181 Ohio App.3d 710, 2009-Ohio-1506, ¶ 29 (7th Dist.). A proffer that provides "no specific information * * * does not provide an appropriate basis for review." *Brown* at ¶ 44, citing *State v. Tyra*, 2d Dist. Montgomery No. 27040, 2017-Ohio-313, ¶ 28.

{¶33} Here, rather than detailing his proposed testimony with the required specificity, Robinson's proffer consisted only of speculation and general

-22-

descriptions of the kind of things about which Robinson wanted to testify. We suspect that Robinson would not have portrayed Watson's driving in a favorable light. Yet, from Robinson's proffer, we cannot be certain how Robinson would have testified. Robinson's proffer embraces everything from testimony of model driving on Watson's part to testimony that Watson deliberately ran into Robinson's truck. Thus, even with a final admissibility determination, this ambiguity would frustrate meaningful review. *See Brown* at ¶ 37-39, 43-44, 51-52 (where a proffer claimed that experts were qualified to render opinions and that their opinions were admissible but failed to actually disclose their opinions, appellate court lacked a meaningful basis for review).

{¶34} Robinson's second assignment of error is overruled.

### Assignment of Error No. III

**Appellant's constitutional right to testify at trial was violated when the trial court failed to ensure that appellant knowingly, intelligently, and voluntarily waived that right.**

{¶35} In his third assignment of error, Robinson argues that he was improperly deprived of his constitutional right to testify in his own defense because the trial court did not ensure that he knowingly, intelligently, and voluntarily waived that right. Robinson argues that the trial court "should have informed [him] that he had a right to testify" because there was an "open disagreement" between himself

and his trial counsel about the decision whether to testify in his defense. (Appellant's Brief at 14).

{¶36} "Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused." *State v. Bey*, 85 Ohio St.3d 487, 499 (1999). However, "a trial court is not *required* to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." (Emphasis sic.) *Id.*

{¶37} While Robinson acknowledges that trial courts do not usually have a duty to conduct an inquiry with the defendant concerning the defendant's decision whether to testify, he argues that an exception applies where there are "any statements or actions from the defendant indicating disagreement with counsel [about the decision to testify] or the desire to testify * * *." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir.2000). He maintains that this exception is applicable here because he "filed a pro se motion shortly before trial requesting different counsel due to a disagreement with counsel" and that during a hearing on the motion, it was apparent that he and his trial counsel "had a difference of opinion on trial strategy." (Appellant's Brief at 14). Robinson also claims that the exception applies because "defense counsel indicated that Robinson wished to testify" during pretrial discussions regarding the State's motion in limine. (*Id.*).

{¶38} However, assuming that Robinson has identified an exception to the general rule, we conclude that this exception does not apply under the particular facts of this case. Although Robinson did file a motion for new counsel shortly before trial, which was premised on disagreements with his trial counsel, the motion itself and the proceedings at the hearing on the motion make clear that these disagreements did not relate to Robinson's decision whether to testify in his own defense. Rather, Robinson sought new counsel because he felt that his trial counsel had not provided him with discovery materials to which he felt entitled and because he disagreed with his trial counsel's decisions on whether certain witnesses would be subpoenaed and on how other evidence would be prepared and presented. (*See* Doc. No. 173); (*See generally* Nov. 5, 2019 Tr.). Furthermore, there is nothing in the transcript of Robinson's trial suggesting that Robinson desired to testify or that he and his trial counsel disagreed about whether he should do so. Robinson's trial counsel merely stated that Robinson "may take the stand" and explained what Robinson's testimony might be "if [Robinson] would testify * * *." (Nov. 12-14, 2019 Tr., Vol. I, at 180-181). In addition, when the time came for Robinson to put on his own evidence, Robinson did not present any evidence but instead rested his case without comment from Robinson or his trial counsel about whether Robinson wished to testify. (Nov. 12-14, 2019 Tr., Vol. III, at 529). Accordingly, because we have found nothing in the record suggesting that Robinson misunderstood or

was unaware of his right to testify or that the trial court was aware of a disagreement between Robinson and his trial counsel over Robinson's decision whether to testify, we conclude that the trial court did not err by failing to ensure, sua sponte, that Robinson knowingly, intelligently, and voluntarily waived his right to testify.

**{¶39}** Robinson's third assignment of error is overruled.

**{¶40}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**