[Cite as *State v. Nye*, 2021-Ohio-2557.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

    Appellee

v.

Richard Nye

    Appellant

Court of Appeals No. WD-20-058

Trial Court No. 2019CR0366

**DECISION AND JUDGMENT**

Decided: July 23, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold and James A. Hoppenjans, Assistant Prosecuting
Attorneys, for appellee.

Brian C. Morrissey, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** This case is before the court on appeal by appellant, Richard Nye, from the

August 12, 2020 judgment of the Wood County Common Pleas Court. For the reasons that

follow, we affirm in part, reverse in part, and remand to the trial court for a restitution

hearing.

## Assignments of Error

I. The trial court erred in giving the jury instruction which reads "Names on a joint bank account is not conclusive proof to the issue of ownership of funds in that account."

II. The finding of guilty was against the manifest weight of the evidence.

III. The trial court erred in not granting the Rule 29 motion for acquittal by the Appellant as the guilty verdict was based upon insufficient evidence.

IV. The sentence of the trial court was erroneous in ordering interest payments to be made without a restitution hearing.

V. The trial court improperly considered juvenile adjudications of the Appellant in rendering a sentence.

## Background

{¶ 2} On August 22, 2019, appellant was indicted on one count of grand theft, in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fourth degree. He was arraigned on September 10, 2019, and entered a plea of not guilty.

{¶ 3} A jury trial was held on June 15, 2020. The following relevant testimony was presented.

{¶ 4} Gretchen Nye, appellant's ex-wife, testified that when their marriage ended, she and appellant signed a Separation Agreement that was incorporated into their Decree

2.

of Dissolution on June 29, 2017.[1]  In their Separation Agreement, Gretchen and appellant agreed, inter alia, that "[t]he parties have financial accounts and agree the accounts are already divided and in the name of the proper party," and that "[t]he pension(s), profit sharing, IRA, 401(k), or other retirement plans are already divided and in the proper party's name."  Based on this, she believed that their accounts "were completely divided."  The accounts she believed were hers included a savings account and a checking account with First Federal Bank ("the bank").  Gretchen testified that around the time of the dissolution, she went to the bank to remove appellant's name from her accounts.  She stated that she closed their joint checking account and that she also asked the bank to remove appellant's name from the joint savings account.  However, appellant's name remained as a joint account holder on the savings account.  According to Gretchen, appellant did not deposit any money into the joint savings account after the dissolution.

{¶ 5} Gretchen testified that she believed that appellant's name was no longer on the savings account.  She further explained that she does her banking online, and when she looked at her account online, appellant's name was not listed as a joint owner of the account.  Paper statements were admitted into evidence and were addressed to both parties at appellant's address.

---

[1] At times, Gretchen refers to this document, which was introduced into evidence, as her "Divorce Decree."  However, a review of the document reveals that it is a Decree of Dissolution with an attached Separation Agreement.  Similarly, Gretchen generally refers to her dissolution as a "divorce."  To be consistent, we will use the term "dissolution."

3.

{¶ 6} In March of 2019, Gretchen borrowed money from her 403(B) retirement account in the amount of $18,000 to pay off bills, take a vacation, put a new roof on her home and remodel a bathroom. She put some of that money into the savings account that was jointly in her and appellant's names.

{¶ 7} On June 21, 2019, Gretchen attempted to transfer money from the savings account to her checking account when she discovered that $12,000 was missing from the savings account. Upon calling the bank, she was informed that appellant had withdrawn the money. Gretchen then called appellant. She did not reach him right away, but when he eventually answered, she told him she wanted the money back. He responded "Fine, Come get it." He also told her that he had spent some of the money, but she "could come get what he had left and then he would pay [her] back the rest later." Gretchen further testified that she did not intend for appellant to have the money and that, as of the date of trial, she has not received any of the money back from appellant.

{¶ 8} Beth Burke, a client service manager at the bank, was also called to testify. According to Burke, she was familiar with appellant as he came in approximately once a week to do his banking. There was nothing unusual about appellant's transactions until he came in to the bank around June 21, 2019, and withdrew $12,000 from the joint savings account. Prior to that date, Burke was not aware of appellant ever depositing anything into, or withdrawing anything from, that account.[2] Burke testified that appellant

---

[2] There were generally three bank tellers working at any given time, so Burke conceded she did not assist appellant every time he came into the bank. She also admitted that she did not recall every transaction appellant had made.

explained that he was withdrawing the amount to purchase a vehicle and that he had been putting money into this account to save "without his girlfriend knowing about it."

{¶ 9} Burke further explained that, from the bank's perspective, a joint bank account is owned by both owners and either party has authority to withdraw money. She also stated that the bank's policy would not allow Gretchen to just remove appellant's name from the savings account. Instead, she would have had to close the account.

{¶ 10} After this testimony, the state rested its case and the state's exhibits were admitted into evidence.[3] Appellant then moved for an acquittal pursuant to Crim.R 29. The trial court denied the motion, appellant rested his case without calling any witnesses, and the matter was submitted to the jury. After deliberations, the jury found appellant guilty.

{¶ 11} A sentencing hearing was held on August 11, 2020. Both Gretchen and appellant spoke. Then, prior to sentencing, the court made numerous comments, including the following relevant statements.

> Multiple, one, two, at least three, four Department of Youth Services stays for offenses, adjudications committed as a juvenile. Then, as has been outlined by the prosecutor already, and I'm just going [to] focus on the prison sentences here, '95, Lucas County, 18 months' confinement for a

---

[3] These exhibits included the Decree of Dissolution, various banking statements from First Federal Bank, a loan request confirmation form and an account statement both relating to Gretchen's retirement account, and a copy of the withdrawal slip used by appellant to withdraw the $12,000.

5.

theft-related offense; '96, Lucas County, 18 months' confinement for a theft-related offense; '97, crack cocaine, six months in Ohio Department of Rehabilitation and Corrections, so a third prison sentence; 1998, receiving stolen property, sentenced to 11 months ODRC consecutive to another offense, fourth prison sentence; receiving stolen property in 2000, 17 months, fifth prison sentence; count 2, seven months, sixth prison sentence consecutively; 2019, this offense. And then it's my understanding also there is - - and I'm the judge presiding over the current grand jury - - that there is a series of new charges filed against the defendant, including a felony of the first degree, engaging in a pattern of corrupt activity, receiving stolen property, and money laundering.

So the offense before me today is a felony of the fourth degree and there is a presumption against a prison term, which, clearly, clearly, can be overcome given the numerous prior prison terms that have been imposed upon this defendant.

There are also two factors increasing the seriousness of the offense, the victim suffered serious economic harm as a result of the offense, and the offender's relationship with the victim clearly facilitated the commission of the offense.

There are three factors indicating recidivism is more likely. Because of the defendant's prior adjudications as a juvenile delinquent and his

history of criminal convictions, he's demonstrated he's not been rehabilitated to a satisfactory degree after those adjudications, nor has he responded favorably to sanctions imposed for criminal convictions. Until just moments ago, the offender has shown no genuine remorse for the offense whatsoever. One measure of that genuine remorse could have been making a portion of the restitution. If he was genuinely sorry, genuinely apologetic, he could have made some restitution for the sake of his children, if not anything else. But we know that his care for his children is diminished when you have $7,000 in back unpaid child support.

{¶ 12} The court then sentenced appellant to 17 months in the Ohio Department of Rehabilitation and Corrections and ordered him to pay restitution in the amount of $12,000 plus an additional $343 a month as restitution for the interest Gretchen pays on the loan from her retirement account. Once this sentence was imposed, appellant's attorney requested a restitution hearing. The court denied this request and appellant timely appealed.

## First Assignment of Error

{¶ 13} Appellant argues that the trial court erred when it instructed the jury that "[n]ames on a joint bank account [are] not conclusive proof to the issue of ownership of funds in that account."

{¶ 14} "A trial court is obligated to provide jury instructions that correctly and completely state the law." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio

St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22, citing *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 649 N.E.2d 1219 (1995). The instructions also must be warranted by the evidence presented. *Id.*, citing *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112, ¶ 26. We review whether a jury instruction is legally correct and factually warranted under a de novo review. *Id.*

{¶ 15} Appellant contends that the contested jury instruction is not a correct statement of the law as it allows the jury to ignore the statutory definition of the word "owner" found in R.C. 2913.01(D).[4] Appellant cites to Burke's testimony as evidence that appellant was an owner of the account. He also argues that the jury instruction places the burden on appellant to prove "something more" than that he was a named owner on the account.

{¶ 16} The state counters that the relevant issue is whether appellant was the owner of the funds in the account and that the jury instruction properly instructed the jury on the law in Ohio and was necessary to clarify the issue.

{¶ 17} The jury instruction discusses ownership of the funds within a bank account. The Ohio Supreme Court has stated that, while there is a rebuttable presumption that "coowners of [a joint bank] account share equally in the ownership of the funds on deposit," that presumption can be overcome by showing "the realities of ownership."

---

[4] R.C. 2913.01(D) defines an owner as "unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful."

8.

(Citations omitted.) *Vetter v. Hampton*, 54 Ohio St.2d 227, 231, 375 N.E.2d 804 (1978). Furthermore, the Ohio Supreme Court has stated that, during the lifetime of the parties, "a joint and survivorship account belongs *** to the parties in proportion to the net contributions by each to the sums on deposit, unless there is a clear and convincing evidence of a different intent." *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 12, quoting *In re Estate of Thompson*, 66 Ohio St.2d 433, 423 N.E.2d 90 (1981), paragraph one of the syllabus.

{¶ 18} While the application of this law in a criminal context is sparse, the state has cited to two cases in which this law was applied to determine ownership of funds in a joint account in theft cases. *State v. Warrix*, 2d Dist. Montgomery No. 26556, 2015-Ohio-5390, ¶ 33 and *State v. Woodburn*, 2019-Ohio-2757, 140 N.E.3d 66, ¶ 16 (4th Dist.). Appellant observes these cases did not deal with the propriety of a jury instruction. However, we find the fact that the courts in these cases applied this law to criminal cases to be relevant.

{¶ 19} Based on the above, we find the jury instruction is both a correct statement of the law and warranted by the evidence presented. Additionally, we find the jury instruction is not in conflict with the statutory definition of owner as set forth in R.C. 2913.01(D) and we further find the jury instruction did not place the burden of proof on appellant. Therefore, the first assignment of error is not well-taken.

9.

**Second Assignment of Error**

{¶ 20} Appellant contends that the jury's finding of guilt was against the manifest weight of the evidence.

{¶ 21} When considering whether a conviction was against the manifest weight of the evidence, an appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  The reviewing court sits "as a 'thirteenth juror' and may disagree with the fact-finder's resolution of the conflicting testimony."  *State v. Stein*, 6th Dist. Lucas No. L-19-1171, 2021-Ohio-761, ¶ 34, citing *Thompkins* at 387.

{¶ 22} Appellant was convicted of grand theft, in violation of R.C. 2913.02(A)(1), which states that "no person with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."

{¶ 23} Appellant maintains that his conviction was against the manifest weight of the evidence for the following reasons: theft is a specific intent crime; it was a joint bank

10.

account and it is presumed that as a co-owner of the account, he shares equally in the ownership of the funds; and the bank considered him to be an owner of the account.

{¶ 24} Upon review, we do not find this to be an exceptional case in which the evidence weighs heavily against conviction. Although there is a presumption that co-owners in a joint account share ownership of the funds in the account, this presumption can be rebutted. *Vetter,* 54 Ohio St.2d at 231, 375 N.E.2d 804. Here, there was significant evidence that appellant did not own the funds in the account. On the day of the dissolution, the balance in the account was $56.78 and there was testimony that, since that date, Gretchen was the only one to deposit money in the account. Gretchen also specifically traced the origin of the $12,000 to her personal retirement account and provided financial documents to support this.

{¶ 25} Appellant has pointed out that he was not charged with a violation of R.C. 2913.02(A)(2), which requires proof that an individual used the property beyond the scope of their authority, but rather was charged under R.C. 2913.02(A)(1), which applies when a person does not have permission to take the money. Despite the fact that his name was on the account, the evidence supports a finding that Gretchen never gave appellant permission to take the money. Unlike cases where the money is initially placed into an account with the understanding that a person has the authority to take the money out of the joint account, in the present case Gretchen testified that she did not know appellant's name was still on the account.

11.

{¶ 26} With respect to intent, there is also evidence that appellant knew the money in the savings account was Gretchen's, not his, and therefore, his withdrawal of the money shows an intent to deprive the owner of the money. As discussed above, there is evidence that, since the date of the dissolution, appellant did not transact any business through that account until the day he withdrew the $12,000. Moreover, when Gretchen called appellant after discovering the missing money, he told her to "come get it" and that he had "already spent some of it" but she "could come get what he had left and then he would *pay [her] back* the rest later." (Emphasis added).

{¶ 27} For the foregoing reasons, we find appellant's second assignment of error not well-taken.

### Third Assignment of Error

{¶ 28} Appellant argues that the trial court erred when it denied his Crim.R 29 motion for acquittal as there was insufficient evidence to support the guilty verdict.

{¶ 29} "A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. The denial of a motion for acquittal under Crim.R. 29(A) 'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" (Citations omitted.) *State v. Tucker*, 6th Dist. Wood No. WD-16-063, 2018-Ohio-1869, ¶ 22.

{¶ 30} "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

12.

doubt.' '[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" (Citations omitted.) *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 31} For the reasons discussed above with regard to appellant's manifest weight argument, we also find sufficient evidence to support the jury's finding of guilt. Accordingly, we find appellant's third assignment of error not well-taken.

## Fourth Assignment of Error

{¶ 32} Appellant alleges that the trial court erred in ordering him to make interest payments without first conducting a restitution hearing. The state has conceded that appellant was entitled to a hearing.

{¶ 33} R.C. 2929.18(A)(1) requires a court to hold a hearing on restitution if the offender disputes the amount. In the present case, appellant's attorney requested a restitution hearing as she "had no notice that there would be any request to go above the $12,000." Based upon this, we find appellant was entitled to a hearing. Therefore, we find the fourth assignment of error well-taken.

## Fifth Assignment of Error

{¶ 34} Appellant argues that the trial court improperly considered his juvenile adjudications when it rendered his sentence. In support, he cites to *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, wherein the court found that a statute violated the due process clause because "it is fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence

13.

for a subsequent offense committed as an adult." *Id*. at paragraph one of the syllabus. "However, *Hand* does not preclude a trial court from considering a defendant's juvenile record when reviewing the likelihood of recidivism under R.C. 2929.12. The [Ohio Supreme] Court noted this distinction, explaining: '[T]here is a significant difference between allowing a trial judge to consider an adjudication during adult sentencing and requiring a mandatory prison term to be imposed because of it.'" *State v. Chase*, 11th Dist. Lake Nos. 2020-L-070, 2020-L-071, 2021-Ohio-1006, ¶ 22, quoting *Hand* at ¶ 20. *See also State v. Villarreal*, 6th Dist. Sandusky No. S-17-020, 2018-Ohio-888, ¶ 21 (Finding *Hand* does not prohibit a trial court from considering a defendant's juvenile adjudications when weighing the seriousness and recidivism factors in R.C. 2929.12).

{¶ 35} Here, the judge's references to appellant's juvenile adjudications were made in the context of determining whether recidivism was more likely, pursuant to R.C. 2929.12. Therefore, the trial court's consideration of these adjudications was not improper. Accordingly, we find appellant's fifth assignment of error not well-taken.

### Conclusion

{¶ 36} The judgment of the Wood County Common Pleas Court is affirmed, in part, and reversed, in part. The judgment is reversed only insofar as the court failed to hold a restitution hearing. The matter is remanded to the trial court to conduct a restitution hearing in accordance with R.C. 2929.18(A)(1). Pursuant to App.R. 24, appellant and the state are ordered to split the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.        

_____

JUDGE

Thomas J. Osowik, J.           

_____

Myron C. Duhart, J.             

JUDGE

CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.