[Cite as *State v. Holz*, 2025-Ohio-2711.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Huron           Court of Appeals No. E-24-025
                                        E-24-035

       Appellee                      Trial Court No. 2023 CRB 168
                                        2023 TRD 1613

v.

Henry Holz, II.                           **<u>DECISION AND JUDGMENT</u>**

       Appellant                       Decided: August 1, 2025

* * * * *

Andrea Rocco, City of Huron Prosecuting Attorney, and
Jeffrey Moeller, for appellee.

Samuel Gold, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal. Following a jury trial, the defendant-appellant, Henry Holz II, was convicted of resisting arrest, obstructing official business, and failing to stop after an accident. The Huron Municipal Court sentenced him to serve 56 days in jail and imposed a two-year license suspension, plus other penalties. On appeal, Holz argues that the verdict was against the manifest weight of the evidence and that the trial court improperly violated his right to a fair trial by excluding his sole witness from testifying at trial. We affirm.

## I. Background

{¶ 2} This case began when Holz "sideswiped" a vehicle driven by "C.Z." on November 3, 2023 near Route 2, in Erie County. C.Z. called 911 and followed Holz's vehicle until it stopped in the driveway of a home located at 917 Taylor Street in the City of Huron. When police arrived and asked Holz about the incident, he denied any involvement and told police that they were trespassing. Based upon C.Z.'s description of the event and the visible damage to both vehicles, police advised Holz that his vehicle would be impounded as evidence. Moments later, Holz exited the home and attempted to get into the truck. Holz refused a police order not to get into the vehicle and was ultimately placed under arrest. It took three officers to get Holz into the police cruiser.

{¶ 3} As to the sideswiping of C.Z.'s vehicle, Holz was cited with four traffic violations: failure to stop after an accident, driving with a suspended license, reckless operation, and passing on the right. (Huron Municipal Court case No. 2023-TRD-1613). Separately, Holz was also charged with resisting arrest and obstructing official business. (Huron Municipal Court case No. 2023-CRB-168). The failure to stop, resisting arrest, and obstructing official business were tried jointly to a jury, on April 10, 2024. The remaining traffic offenses were tried to the municipal court and are not subject to this appeal. A summary of the evidence offered at trial is set forth below.

{¶ 4} C.Z. testified that at around 11:30 p.m. on November 3, 2023, she was driving east on Cleveland Road and preparing to turn right onto Rye Beach Road. At the intersection, an oncoming black truck, described as a black Ford F-350, was turning left onto Rye Beach Road and "gun[ned] it in front of [C.Z.] instead of yielding to [her] right-

2.

of-way." The driver of the truck, later identified as Holz, then "slow[ed] down as soon as [C.Z.] got behind him." C.Z. wanted to "avoid[] whatever nonsense was happening" and decided to get in front of the truck. After C.Z. passed Holz, Holz began "revving the engine" and "getting on [her] tail." When C.Z. turned onto the on-ramp to enter Route 2, which is a one-lane road, Holz sped up and passed C.Z. by driving on the shoulder, to her right. C.Z. described what happened next:

> I looked over. He's right next to me. He slams his truck into mine. I freak out, try and speed up a little bit to understand what's happening, maybe get away, I'm going off the side of the road. He hits me. He's still pushing my car. So instead, I hit the breaks to get away from him, and then that's when he just took off.

{¶ 5} According to C.Z., Holz hit her vehicle twice, within "seconds" of each other, first by "slam[ming]" into the back end and then "scraping up against" it. C.Z. said that she was able to identify Holz as the driver of the truck because she saw him through his driver's side window, both times he passed her. She described Holz as having a "dead, scary face."

{¶ 6} After the collision, C.Z. called 911 while she continued to drive. C.Z. stayed on the phone with the 911 operator the "entire time," as she followed Holz from Route 2 to the home on Taylor Street. C.Z. observed Holz "almost sideswipe[] a car in his driveway" before he parked and walked into the house, without "even acknowled[ing]" C.Z. C.Z. "stayed back about a house or two [but] kept [her] headlights directed on him."

{¶ 7} Within five minutes, the Huron Police Department arrived, and C.Z. described what had occurred and showed the officers the damage to her car. C.Z. stayed and watched as the officers knocked on the front door of the home and began speaking

3.

with the man who answered the door, whom C.Z. identified as Holz. A few minutes later, the police advised C.Z. to leave because Holz was being "uncooperative." According to the record, C.Z.'s vehicle sustained $7,500 in repair costs, as a result of the collision.

{¶ 8} Next to testify were four officers with the Huron Police Department—Connor Rospert, Dylan Rohrbaugh, Logan Bethard, and Ryan Boesch—all of whom were dispatched to Taylor Street that night.

{¶ 9} Officer Connor Rospert arrived first on the scene. After taking C.Z.'s statement and observing the damage to her car, Officer Rospert proceeded to the front door of the home. Along the way, he observed that the truck had a "large paint scratch" on the driver's side, which was "consistent" with the scratch on C.Z.'s vehicle. After Officer Rospert knocked on the front door, a man answered, who told the officer that he was "trespassing" and that he was "not allowed to be on his property." At trial, Officer Rospert identified the person answering the door as Holz, but that night, Holz refused to identify himself, despite being asked three times. Holz denied any involvement in the incident with C.Z. And, when asked about the damage to his truck, Holz reported that earlier in the day, "around 4:00 p.m.," his truck had been struck by another vehicle, also on Route 2, but Holz had not reported it because he intended to "take care of the damages himself."

{¶ 10} Officer Boesch, who was standing nearby and the most senior officer on duty, "informed" Holz that the truck would be towed. Section 308.08 of the Huron Municipal Code authorizes the police to impound a vehicle when it "has been operated by any person who has failed to stop in case of an accident or collision," whether the vehicle

4.

is on "public or private property." At trial, Officer Boesch explained that there was "more than enough probable cause" to conclude that the truck had been involved in an accident, based on C.Z.'s statement and his own observation of the damage to the two vehicles, which was "an exact match" or at least "pretty doggone close."

{¶ 11} When Holz learned that the truck would be towed, he "closed the door." Moments later, Holz reappeared from a side door and walked towards the truck. Officer Rospert "made his way" to the driver's side of the truck to "prevent" Holz from leaving. Holz was advised that police were "legally investigating a complaint" and that he should "not [to] get into his truck" because it was "getting towed." But Holz, who appeared "likely intoxicated" and "uncooperative," reiterated that police "were trespassing" and then "opened the door" to his truck.

{¶ 12} "As soon as [Holz] opened up his door," Officer Rospert placed his left hand onto Holz's chest and "grabbed" part of his jacket "to push him away from getting into his truck," and he advised Holz that he was under arrest, for obstructing official business. But Holz "pulled away" from the officer and placed "one hand to his waistline." According to Officer Boesch, "[w]hen somebody's hand. . .goes to their waistline, that's [when] we need to control that situation right away." Officer Boesch added that, in this case, "I ha[d] zero idea of what's going on. He's been told he's under arrest. He's been told to put his hands behind his back. He's not doing any of those things. So, we're doing everything we can to get his hands under control, get him under arrest."

5.

{¶ 13} Holz "continued to resist" by refusing to release his grip on "something in his hand." Officers advised Holz "several times" that if he did not release his hands, he would be "taken to the ground." After several more warnings, the officers "performed a takedown." With some effort, the officers were then able to pry the object, a key to the truck, out of Holz's hand and to place him in handcuffs. During Holz's "shenanigans" with police, Officer Boesch cut his pinky, which bled "profusely" and left a scar.

{¶ 14} A few moments later, while walking to the police cruiser, Holz "attempted to leg sweep" Officer Rohrbaugh, causing the officer to lose his balance, and Holz was "escorted. . . back to the ground." This time, the officers "held him" there until a cruiser could be brought to them. Still Holz resisted, by "refus[ing] to walk," requiring the officers to "drag" him to the cruiser and place him in the back seat, where Holz then started kicking his legs "like a child" and preventing the side door from being shut. Officer Boesch could not "believe the door [did] not bend from the amount of pressure" Holz placed against it with his legs. After pulling Holz into the car from the other side, they were "somehow" able to shut the door. One officer described feeling "exhausted" by the experience.

{¶ 15} The next day, Officer Boesch visited the accident scene near Route 2 where he observed "severe deterioration of the roadway" and tire marks where the truck "started going off the roadway." He also obtained a surveillance video from the gas station located at the intersection of Cleveland Street and Rye Beach Road, which showed Holz's truck turning in front of C.Z. Other evidence in the record includes video footage taken from Officer Rospert's body camera. The 40 minute-video, which was played for the

6.

jury, captured the entire incident at Taylor Street, from the taking of C.Z.'s statement, the discussion with Holz at the front door, Holz's arrest, and the towing of Holz's truck.

{¶ 16} For its case-in-chief, the defense called Terri Lentz to testify. The State objected on the basis that Lentz had not been identified as a witness prior to trial, and the trial court granted the prosecutor's motion to exclude Lentz's testimony.

{¶ 17} Following deliberations, the jury found Holz guilty of resisting arrest, in violation of Huron Municipal Code 525.09(b), a misdemeanor of the first degree; obstructing official business, in violation of Huron Municipal Code 525.07, a misdemeanor of the second degree; and failing to stop after an accident, in violation of R.C. 4549.08. The trial court sentenced Holz to 56 days in jail, plus a three-year term of probation. The court also imposed a restitution award, fine, and costs.

{¶ 18} Holz appealed and raises two assignments of error for our review:

> FIRST ASSIGNMENT OF ERROR: The trial court abused their discretion by not permitting defendant's witness to testify.

> SECOND ASSIGNMENT OF ERROR: The jury verdict was against the manifest weight of the evidence.

## II. The exclusion of a defense witness

{¶ 19} In his first assignment of error, Holz claims that the trial court infringed on his right, as guaranteed by the Sixth Amendment to the United States Constitution, to present a defense by prohibiting his sole witness from testifying. "[T]he sanction of exclusion may infringe on a criminal defendant's Sixth Amendment right to present a

7.

defense, particularly where. . . all the defendant's witnesses are excluded." *City of Lakewood v. Papadelis*, 32 Ohio St. 3d 1, 5 (1987).

{¶ 20} Crim.R. 16 controls the discovery process and requires each party to provide the name and address of any witness it intends to call at trial, and the rule further imposes a continuing duty to disclose witnesses as they are discovered. *See* Crim.R. 16(I); Crim.R. 16(A). The purpose of the rule is to "prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." *Id.* at 3, citing *State v. Mitchell,* 47 Ohio App.2d 61, 80, (2d Dist. 1975). A trial court has the discretion to impose sanctions when a party violates the rule. *State v. Prather,* 2023-Ohio-784, ¶ 20 (1st Dist.), citing Crim.R. 16(L). However, "[b]efore imposing the sanction of exclusion, the trial court must find that no lesser sanction would accomplish the purpose of the discovery rules and that the [S]tate would be prejudiced if the witnesses were permitted to testify." *Papadelis* at 5. The factors to be considered when making this inquiry are: "(1) the extent of surprise or prejudice to the State; (2) the impact exclusion of the witness would have on the evidence and the outcome; (3) whether the violation was in bad faith; and (4) the effectiveness of less severe sanctions." *Prather* at ¶ 20, citing *Papadelis* at 10. "It is only when exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible." *Papadelis* at 11-12.

{¶ 21} Here, when the State rested its case-in-chief, Holz called Terri Lentz to testify, and the State objected. The record contains very little information about Lentz, other than the the State's description of her as someone who "was present" at the time of

8.

Holz's arrest.  We also note that a woman, identifying herself only as a "friend" of Holz's mother, briefly appeared in the police video, asking why Holz was being arrested.

{¶ 22} As for its objection, the State complained that Holz had failed to identify Lentz, or any other witnesses for trial, despite being asked "several times," in violation of Crim.R. 16(I).  The State added that, "if" the purpose in calling Lentz was to establish an alibi, then Holz was also in violation of Crim.R. 12.1 ("Notice of alibi"), which provides that "[w]henever a defendant. . . proposes to offer testimony to establish an alibi on his behalf, the defendant shall, not less than . . . fourteen days before trial in a misdemeanor case, file and serve" a notice of alibi.  Defense counsel claimed that it had not identified Lentz as a witness before trial, because "they were not aware of that individual" and "they" only learned of Lentz when she "came forward the day of trial."  Counsel urged the trial court to allow the witness to testify in the "interest of justice" and insisted that the "probative value" of Lentz's testimony outweighed any "prejudicial value." However, defense counsel did not describe what Lentz would testify about.  Following a brief recess, the trial court granted the State's motion to exclude Lentz from testifying, and defense counsel indicated that it "had no further evidence to put on."

{¶ 23} Upon review, the record indicates that the trial court failed to consider the factors set forth in *Papadelis* before barring the witness from testifying, i.e. the extent to which the State would have been surprised or prejudiced by Lentz's testimony, the impact of precluding Lentz as a witness on the evidence at trial and the outcome of the case, whether Holtz's violation of the discovery rules was willful or in bad faith, and the

effectiveness of less severe sanctions. *Id.* at 5. However, the record before us also indicates that Holz did not proffer Lentz's testimony.

{¶ 24} Proffers are governed by Evid.R. 103. When evidence has been excluded by a ruling of the trial court, Rule 103(A)(2) requires an offer of proof to preserve the error for appeal. *See* Evid.R. 102(A)(2) ("[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected; and . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.") Typically, the offering party must show (1) what a witness was expected to say and (2) what the evidence would have tended to prove. *See, e.g.. Ross v. St. Elizabeth Health Ctr.*, 2009-Ohio-1506, ¶ 29 (7th Dist.). The offer of proof requirement is subject to plain error review. *State v. Garfield,* 2011-Ohio-2606, ¶ 44; *See* Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). "Notice of plain error … is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91 (1978), syllabus paragraph number three.

{¶ 25} On appeal, Holz complain that, by excluding Lentz's testimony, the trial court "took away any defense [he] may have had." However, without any proffer identifying the defense or a description of Lentz's testimony and how it would have furthered that defense, we simply cannot find, on these facts, that the trial court committed plain error in excluding her testimony. *Accord, State v. Chapin*, 67 Ohio St.2d 437, 444 (1981) ("We adhere to the longstanding rule that a reviewing court will uphold

10.

the trial court's decision to exclude evidence if the record does not contain a proffer.");

*State v. Miller*, 1995 WL 54083, *5 (6th Dist. Feb. 10, 1995) ("Appellant made no proffer of the excluded testimony; therefore, any error on appeal has been waived.") Accordingly, we overrule Holz's first assignment of error.

### III. The jury's verdict was not against the manifest weight of the evidence.

{¶ 26} In his second assignment of error, Holz argues that the verdict was against the manifest weight of the evidence.

{¶ 27} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1978). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 2012-Ohio-6068, ¶ 15 (6th Dist.), quoting *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 28} Here, Holz denies all responsibility for the "underlying" event in this case, i.e. the collision with C.Z.'s vehicle. And he complains on appeal that "none of the officers" who testified at trial were able to "substantiate" C.Z.'s claim—that it was Holz

11.

who collided with her car—because none of the officers "observe[d]" that event. We reject Holz's argument.

{¶ 29} First, C.Z.'s testimony regarding the collision and her identification of Holz was unimpeached at trial. Further, her testimony was corroborated by *other* evidence, including the gas station video showing a truck failing to yield to a vehicle, that matched the vehicles in the instant case. Other corroborating evidence included the audio from C.Z.'s 911 call that recorded her, in real time, as she trailed the truck that, just moments before, had sideswiped her vehicle, and then followed that truck to the house on Tayler Street and watched as the driver entered the home. The record also includes corroborating evidence from Officer Boesch, who investigated the site of the accident and observed the disruption of the roadway and tire marks where Holz's truck went off the road, just as C.Z. described.

{¶ 30} We extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.). In this case, the jury found the State's evidence supporting Holz's conviction for leaving the scene persuasive, and we can find no evidence to suggest that the jury lost its way in reaching that conclusion.

{¶ 31} Holz's argument with regard to the other two offenses, i.e. obstructing official business and resisting arrest, is a bit different. That is, Holz matter-of-factly admits his "resistance to being arrested" that night and generally concedes that he has a

12.

"negative attitude towards police." We agree that the evidence of his guilt as to those offenses is overwhelming, supported by the testimony of four police officers, as well as a 40-minute video showing Holz's failure to comply with lawful, repeated instructions by police *and* his physical resistance to a lawful arrest, including his pulling away from the officers and refusing to allow himself to be handcuffed, tripping an officer, refusing to walk, and kicking "like a child" when being placed in a patrol care.

{¶ 32} Rather than challenge the evidence underlying his conviction, Holz claims that the "jury could not view [him] in an objective light." Holz cites two reasons for this: (1) his star witness, i.e. Lentz, was not allowed to testify and (2) the "accumulation of [State's] evidence" created a bias [against him that] the jurors could not disregard."

{¶ 33} We have already rejected the former argument in Holz's first assignment of error. We consider the latter argument as a challenge under Evid.R. 403(A) which renders otherwise relevant evidence inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Again though, because Holz raises this argument, of unfair prejudice, for the first time on appeal, the trial court did not have an opportunity to rule on the issue. "The failure to object to evidence at trial constitutes a waiver of any challenge to the admission of that evidence on appeal." *State v. Johnson,* 2023-Ohio-2424, ¶ 34, (6th Dist.), quoting *State v. Crawford*, 60 Ohio App.3d 61, 62 (6th Dist.1989). Failure to object on Evid.R. 403(B) grounds, without any basis for unfair prejudice, confusion of the issues, or misleading the jury, waived all but plain error, and we do not find any plain error. *State v. Obermiller*, 2016-Ohio-1594, ¶ 65.

13.

**{¶ 34}** Holz's conviction was not against the manifest weight of the evidence simply because the jury chose to believe the State's witnesses and its version of events. We cannot conclude that the jury "clearly lost its way" in finding Holz guilty, nor are we persuaded that the "evidence weighs heavily against conviction." We find that his conviction is not against the manifest weight of the evidence, and we find Holz's second assignment of error not well-taken.

## IV. Conclusion

**{¶ 35}** For the reasons set forth above, we affirm the June 7, 2024 judgment of the Huron Municipal Court. Holz is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Thomas J. Osowik, J. | |
| | JUDGE |
| Myron C. Duhart, J. | |
| | JUDGE |
| Charles E. Sulek, P.J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.