[Cite as *McDonald v. Foos*, 2026-Ohio-1004.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Debra L. McDonald, in her capacity
of Executrix for the Estate of Wilma
Jennings

       Appellant

v.

George J. Foos, et al.

       Appellees

Court of Appeals No.  {87}WD-24-069

Trial Court No.  2023 CV 0414

**DECISION AND JUDGMENT**

Decided: March 24, 2026

* * * * *

Paul C. Redrup, for appellant.

Richard Kolb and Braden Blumenstiel,
for appellees.

* * * * *

**SULEK, J.**

{¶ 1} Appellant, Debra McDonald, Executrix of the Estate of Wilma Jennings, appeals a judgment from the Wood County Court of Common Pleas confirming a jury verdict in favor of appellees, George and Rita Foos.  Upon due consideration, the judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} Wilma Jennings and the Fooses were friends and neighbors for over 40 years. In 2018, Jennings executed a survivorship warranty deed granting the Fooses nearly 25 acres of agricultural land. In October 2020, Jennings, nearly 90, needed more help personally and around the house so the Fooses contacted Debra McDonald, a retired STNA and friend of the Jennings' family. Soon after hiring McDonald, Jennings informed the Fooses that they were "parting ways." Attempts by the Fooses to speak with Jennings resulted in the sheriff's office being called to Jennings' home. The Fooses believed that McDonald influenced Jennings' actions.

{¶ 3} In October 2021, Jennings filed a verified complaint seeking return of the property. Jennings claimed that the Fooses fraudulently induced her to give them the property by promising that as consideration they would care for her the rest of her life. Jennings claimed that they failed to provide the agreed-upon care. The Fooses filed a third-party complaint against McDonald claiming that she fraudulently induced Jennings to breach their agreement; the parties reached a settlement, and the Fooses subsequently dismissed their claim against McDonald.

{¶ 4} Jennings died in January 2023, and on April 24, 2023, McDonald, as the executrix of the estate, dismissed the action without prejudice.

{¶ 5} McDonald commenced a second action for return of the property requesting the court declare that the 2018 deed was void and raising claims of fraud in the inducement, fraud, quiet title, breach of contract, trespass, trespass to chattels,

2.

conversion, and breach of fiduciary duty, and she requested an accounting of all actions undertaken by the Fooses while acting as Jennings' power of attorney.

{¶ 6} The matter proceeded to a jury trial with the parties stipulating to the admission of the Fooses' and Wilma Jennings' prior deposition testimony. Prior to commencement, the parties discussed the Fooses' proposed jury instruction of tortious interference with contract. The Fooses' counsel explained that "one of our main defenses, other than the fact that it was a gift, is going to be that Deb interfered with anything that our clients are alleged that they were supposed to do." McDonald's counsel stated that defending against a claim "you don't have to assert a claim of tortious interference, you would simply have to indicate that the purpose or their completion of the contract was frustrated." The Fooses' counsel acknowledged that "it would be an inappropriate claim" but they wanted to preserve "the argument that Deb is the one that frustrated our client's ability, if the jury even considers there was a contract, so I don't have a problem withdrawing."

{¶ 7} The parties presented the testimony of the Fooses, McDonald, Jennings' daughter Marilyn Bostleman, and multiple family friends. George Foos testified that during the relevant time period, Jennings was a widow who had two adult children, one of which, Karen, always required specialized care due to having epilepsy. He stated that for nearly 40 years he helped Jennings around the house with tasks such as mowing grass, plowing snow, taking her to doctor, dentist and hair appointments, working on her roof, furnace, and other household fixtures, and helping her with Karen. Counsel then

3.

presented George with Jennings' deposition testimony where she denied most of George's assertions but agreed that he fixed the bathroom sink. George testified that Jennings gifted Rita and him the property "based on everything we had done in the past for her," her mother and father, her husband, daughter, and brother.

{¶ 8} On October 19, 2020, Jennings called the Fooses and told Rita that they were "parting ways." George went to her home after work; he testified that he saw McDonald sitting on the floor counting money. After unsuccessfully trying to enter the house, George returned home. A deputy sheriff soon arrived. After discussing the matter and expressing their concerns, the Fooses agreed to not enter Jennings' property without permission.

{¶ 9} On November 8, 2020, George telephoned Jennings at least once (the sheriff's report lists three calls) and she hung up on him. McDonald called the sheriff's office and explained that she would like the Fooses to remove all their belongings from Jennings' barn, return Jennings' tractor, and end all communications with them.

{¶ 10} On November 28, 2020, a deputy sheriff came out a third time following claims that George damaged the barn while removing his property and that he took items that did not belong to him, including a ladder. George agreed that he failed to acknowledge any damage to the barn's threshold and claimed that the ladder was his.

{¶ 11} Finally, on January 13, 2021, McDonald called the sheriff's office claiming that the Fooses had stolen a zero-turn lawnmower from the property. George stated that Jennings purchased the mower in 2016, but that she could not operate it. He stated that

4.

the mower was too small and that he used his own mower to cut her lawn. George maintained that Jennings eventually gave him the mower and he sold it for approximately $1,000.

{¶ 12} Counsel questioned George about seemingly contradictory statements he made that McDonald had caused the Fooses to breach their contract with Jennings and that Jennings gifted them the 25-acre parcel. George stated that Jennings gifted the acreage and that they separately agreed to become Karen's guardians and care for her for the rest of her life in exchange for a different property owned by Jennings (approximately 40 acres including the house).

{¶ 13} During cross-examination, George explained that Jennings offered to give the Fooses the 25-acre parcel approximately three months prior to the transfer and that nothing was requested or offered in return. He explained that he and Rita had been aiding Jennings for several years and had intended to continue. He acknowledged that nothing was in writing but at the time he believed that Jennings would not go back on her word.

{¶ 14} George explained that he left a ladder in Jennings' barn to use when he replaced the shingles that blew off her roof. As to the mower, he sold it for $1200 and gave Jennings $1000 because he invested money to repair it prior to sale.

{¶ 15} Rita agreed that Jennings' 2018 estate plan left the farmhouse on 40 acres and the remainer of her property to the Fooses. Jennings' will requested that the probate court appoint George as Karen's guardian, with Rita as successor. Rita stated that they

5.

would currently be caring for Karen if the will had not been voided.  When asked whether she had once pushed Jennings down into her recliner and called her incompetent, Rita denied ever doing so.  She stated it was the first time she ever heard the allegation.

{¶ 16} Rita testified that McDonald refused to be paid by check allowing Jennings to submit the amounts to insurance for reimbursement.  She requested to be paid in cash so there was no "paper trail."

{¶ 17} McDonald testified that she is currently living in Jennings' home.  She is a retired STNA and home healthcare aid.  McDonald befriended the Jennings family when she was in elementary school with Karen.  Karen had seizures in school and was bullied, and McDonald felt bad about it because her brother had epilepsy.  They maintained a relationship through the years.

{¶ 18} In October 2020, Rita Foos contacted McDonald asking if she could help Jennings take a shower.  She agreed to help. When she arrived at Jennings' home there was garbage and cobwebs all over, clothing and other belongings piled everywhere, a soiled mattress, and mice feces.  Photographs depicting the condition of the house were admitted into evidence.

{¶ 19} McDonald agreed to help on a regular basis and stated that she did not expect payment.  McDonald claimed that within a week Rita Foos contacted her and said that Jennings wanted to hire a home healthcare agency and did not want her to come over anymore.  McDonald said that Jennings called the Fooses and told them they were

6.

parting ways and not to contact her but they did not listen. She agreed that she called the sheriff's office four or five times to report the Fooses.

{¶ 20} McDonald stated that she commenced the action to protect Karen and that if successful, the land would be returned and placed in Karen's trust and the estate would recover damages for lost crop revenue, the return of the tractor and the mower, and attorney fees.

{¶ 21} McDonald was cross-examined about Jennings' will and trust created on October 16, 2020, of which she is executrix and trustee. On the same day, Jennings executed the new power of attorney, durable and financial, naming McDonald. McDonald acknowledged that the changes were made approximately two weeks after she became Jennings' caregiver. She also agreed that she is the beneficiary of Jennings' home and approximately 80 acres of land and receives a $2,500 monthly trustee fee.

{¶ 22} During family friend Pamela Bundy's testimony McDonald's counsel questioned her as follows:

> Q: Now, the Defendants have spent some time talking about an agreement that they had with Wilma. And so they've indicated some things, and Wilma testified about this at her own deposition, okay?
>
> A: Uh-huh.
>
> Q: So there's a dispute about what may or may not have occurred, all right. Were you ever privy to conversations about that agreement?
>
> [FOOSES' COUNSEL]: I'm just going to object, she's gonna be testifying about things she heard Wilma say as opposed to things heard.
>
> THE COURT: All right, I'll overrule with respect to this question. Go ahead Mr. Frasor.

7.

{¶ 23} The Fooses' counsel objected again, and the court conducted a bench conference. Counsel explained:

> [T]o the extent that that they are going to try and get in terms of an agreement that someone heard from Wilma at a later time, that if they can show that they were present when there was discussions between my clients and Wilma, it's different, but if it's going to be talking about Wilma at a later point in time, that's just hearsay.

{¶ 24} McDonald's counsel argued that there had been "back and forth" testimony regarding the terms of the agreement and that "Wilma testified about it at her deposition, and this is to rebut an express claim of fabrication that the Fooses are trying to assert, that Wilma fabricated this at the pressure of Debra McDonald, and this is not intended to do anything other than rebut a claim of recent fabrication." Counsel clarified: "They are trying to say it's a gift, Judge. They're trying to say there was no agreement for this 25 acres. And Wilma testified otherwise to it, and they are trying to say Wilma is a liar and that she was pressured by Deb."

{¶ 25} The parties then examined Jennings' August 4, 2022 deposition which provided:

> Q: Let me show you a copy of that deed . . . [f]or the 24.85 acres, right?
>
> A: Yeah.
>
> Q: And you say what was the purpose of this?
>
> A: They agreed to take care of Karen but they didn't do it.
>
> . . .

8.

Q: And so you gave them the deed so they would look after Karen and not because they said that they would take care of you for the rest of your life?

A: No.

Q: Am I right there?

A: Yes.

{¶ 26} The discussion turned to the application of Evid.R. 804(B)(5). McDonald's counsel professed that Jennings' testimony, through Bundy, properly rebutted the Fooses' testimony irrespective of whether it contradicted Jennings' prior deposition testimony. Counsel asserted that any conflict would go to the weight of the evidence, not admissibility. The Fooses' counsel countered that the proffered testimony could not be used to rebut Jennings' prior, sworn testimony.

{¶ 27} The court noted that defense counsel offered Jennings' deposition into evidence and that they had to "live with the things that she said during that." Counsel again countered that the discrepancies should go to the weight of the evidence, not admissibility. After further arguments, the court ultimately determined that the testimony "would not be admissible under hearsay if it contradicts statements that the decedent made in her deposition."

{¶ 28} Marilyn Bostelman, Jennings' daughter, testified that after her mother stopped driving, Rita took her and Karen to doctors' appointments and delivered food to Jennings. George mowed her yard, repaired the roof, worked on the kitchen and

9.

bathroom plumbing, and replaced furnace filters. George also helped get Karen up following multiple seizures.

{¶ 29} After the close of the evidence, the parties reviewed jury instructions with McDonald objecting to the Fooses' request to submit a prevention of performance instruction stating that it had not been pleaded as an affirmative defense. McDonald's counsel stated:

> I'm not aware of any authority that allows him to do that during trial. That doesn't provide any notice to Plaintiffs to adequately prepare to countermand any evidence presented for a prevention defense, and unless [the Fooses' counsel] has that authority, they have not amended prior to trial, and this is the first opportunity that they are trying to amend.

{¶ 30} The Fooses countered that Civ.R. 15(B) provides that affirmative defenses may be treated as raised in the pleadings to conform to the evidence presented at trial. Their counsel stated that McDonald is "not unfamiliar with this defense, this is what we've claimed throughout the entire litigation is, you know, first, it's a gift, but even if it was a contract, they were prevented from performing a contractual obligation by Plaintiff."

{¶ 31} McDonald claimed that the instruction would prejudice her because while the interference argument was "touched" on the Fooses had not previously developed that as a case theory. Countering, the Fooses stated that several facts were presented including the sheriff's reports and threats of a restraining order or arrest if they tried to contact Jennings or Karen.

10.

{¶ 32} The trial court ruled in favor of including a prevention of performance instruction and instructed the jury:

> The Defendants claim that if there was an agreement, they were prevented from performing it. This is an affirmative defense. The burden of proving an affirmative defense by a preponderance of the evidence is on the Defendants. The Defendants claim that they were excused from their failure to perform under the contract because the Plaintiff prevented them from performing their promise to fulfill or complete a condition that would have excused the Defendant from performing. You will find for the Defendant if you find, by the greater weight of the evidence, that the Plaintiff, without justification, prevented the Defendant from performing their promises under the contract, and, the Defendant would have performed the contract but for the Plaintiff's actions.

{¶ 33} The jury returned a verdict in favor of the Fooses regarding the title to the 25-acre parcel and for McDonald relating to the return of the tractor. The jury completed several interrogatories in which they determined that the property at issue was not a gift, that it was transferred to the Fooses in exchange for their promise to care for Jennings and Karen for the rest of their lives, that the Fooses breached the agreement with Jennings, but that McDonald wrongfully prevented the Fooses from performing under the contract. This appeal followed.

## II. Assignments of Error

{¶ 34} McDonald raises two assignments of error for review:

I. The trial court erred by excluding hearsay statements of the decedent explicitly offered to rebut testimony of the defendants.

II. The trial court erred by submitting instructions on the affirmative defense of prevention of performance to the jury which defendants never

pled and where defendants withdrew the similar defense of tortious interference prior to trial.

## III. Analysis

## A. Evid.R. 804(B)(5)

{¶ 35} In her first assignment of error, McDonald contends that the trial court erroneously excluded testimony, admissible under Evid.R. 804(B)(5), of Jennings' hearsay statements made to a witness relating to the agreement between her and the Fooses. The Fooses counter that the court properly excluded the testimony because it could not be used to rebut Jennings' prior deposition testimony on the subject. Evid.R. 804(B)(5) provides:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . .
>
> (5) *Statement by a deceased or incompetent person.* The statement was made by a decedent or a mentally incompetent person, where all of the following apply:
>
> (a) the estate or personal representative of the decedent's estate or the guardian or trustee of the incompetent person is a party;
>
> (b) the statement was made before the death or the development of the incompetency;
>
> (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.

{¶ 36} Evid.R. 804(B)(5) "creates 'a hearsay exception for the declarations of a decedent which rebut testimony of an adverse party and is available only to the party

12.

substituting for the decedent.'" *Richards v. Wasylyshyn*, 2012-Ohio-3733, ¶ 19 (6th Dist.), quoting *Testa v. Roberts*, 44 Ohio App.3d 161, 167 (6th Dist.1988). The rule "was promulgated to level the playing field: if the adverse party may testify, the decedent may testify from the grave through hearsay to rebut the testimony by the adverse party." *Eberly v. A-P Controls, Inc.*, 61 Ohio St.3d 27, 32 (1991).

{¶ 37} It is undisputed that McDonald established the Evid.R. 804(B)(5)(a) and (b) requirements for admissibility. McDonald, as executrix, represented the estate and the statements were allegedly made by the decedent to Bundy. Granting the Fooses' objection to the admissibility of the testimony under Evid.R. 804(B)(5)(c), the trial court relied on *Stephenson v. Stephenson*, 2005-Ohio-4358 (9th Dist.), a declaratory judgment action regarding trust assets, where the appellate court found no error in the trial court's exclusion of the statement of the decedent's stockbroker allegedly evidencing a contrary intent to create the trust. The court noted that the statement was not offered to rebut testimony of an adverse party but "a statement by Robert Stephenson himself declaring his intent to create the trust and fund it with the Merrill Lynch accounts." *Id.* at ¶ 21.

{¶ 38} Here, unlike *Stephenson*, McDonald claimed that Bundy's testimony was being offered to rebut the testimony of the Fooses who previously testified that the 25-acre parcel was an unconditional gift. The plain language of Evid.R. 804(B)(5), neither limits the use of a decedent's testimony only to instances where it does not conflict with any of the decedent's prior statements nor does it delineate between sworn and unsworn statements. Moreover, a jury is tasked with assessing a witness's conflicting statements

13.

in determining his or her credibility. *State v. Cook*, 2020-Ohio-3411, ¶ 86 (3d Dist.), quoting *State v. Barrie*, 2016-Ohio-5640 ¶ 22 (10th Dist.). Thus, the court erred by excluding the testimony under Evid.R. 804(B)(5).

{¶ 39} However, even finding error in the court's exclusion of the testimony, McDonald failed to demonstrate that the exclusion affected her substantial rights. Evid.R. 103.

{¶ 40} The trial record, which included the parties' depositions, contained various conflicting statements regarding whether Jennings gifted the 25-acre parcel or whether the transfer was conditioned on the Fooses providing care to Jennings and/or her daughter, Karen. The jury interrogatories reveal that the jurors were not persuaded that the transfer was a gift, thus, the exclusion of the Bundy testimony did not meaningfully impact the verdict. Because the error is harmless, McDonald's first assignment of error is not well-taken.

### B. Jury Instructions

{¶ 41} In her second assignment of error, McDonald contends that the trial court erred by instructing the jury on the affirmative defense of prevention of performance where it was never pled and where the Fooses withdrew a similar jury instruction prior to trial.

{¶ 42} "A trial court is obligated to provide jury instructions that correctly and completely state the law." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 22; *State v. Nye*, 2021-Ohio-2557, ¶ 14 (6th Dist.). "The jury instructions must

14.

also be warranted by the evidence presented in a case." *Id.*; *see also State v. Knuff*, 2024-Ohio-902, ¶ 182 ("[R]equested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction."). A court reviews, de novo, the question of whether a jury instruction is legally correct and factually warranted. *Id.*

{¶ 43} "The prevention of performance doctrine provides that a party who prevents another from performing its contractual obligations cannot rely on that failure of performance to assert breach of contract." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 54, citing *Suter v. Farmers' Fertilizer Co.*, 100 Ohio St. 403 (1919), paragraph four of the syllabus.

{¶ 44} While the Fooses withdrew their request for a tortious inference with contract instruction, they did not withdraw their argument that, assuming that the parties contracted for the 25-acre parcel, McDonald and/or Jennings frustrated the purpose of the contract by terminating all contact and calling the sheriff's office and threatening restraining orders. A review of the trial court record shows that such arguments had been raised prior to the commencement of trial; thus, McDonald should have anticipated the defense strategy.

{¶ 45} At trial, the Fooses presented ample testimony regarding their attempts to contact Jennings and her daughter and the roadblocks erected within days after

McDonald became Jennings' caregiver.  Accordingly, the evidence presented at trial

supported the instruction.  McDonald's second assignment of error is not well-taken.

## IV. Conclusion

{¶ 46} Upon due consideration, the judgment of the Wood County Court of

Common Pleas is affirmed.  Pursuant to App.R. 24, McDonald is ordered to pay the costs

of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Myron C. Duhart, J.                                                _____
JUDGE

Charles E. Sulek, J.
CONCUR.                                                   _____
JUDGE


Christine E. Mayle, J.
CONCURS AND WRITES
SEPARATELY.                                        _____
JUDGE


**MAYLE, J., concurring,**

{¶ 47} I concur with the result reached by the majority.  I write separately because

as to McDonald's first assignment of error, McDonald did not preserve error with respect

to the trial court's exclusion of Bundy's testimony, therefore, we may review only for

plain error. Because it is clear that no plain error occurred here, I would not reach the issue of whether the trial court properly applied Evid.R. 804(B)(5).

{¶ 48} Under Evid.R. 103(A)(2), error may not be predicated on the exclusion of evidence unless (1) the exclusion of evidence affected a substantial right of the party, and (2) "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

{¶ 49} The purpose of making an offer of evidence is to permit the reviewing court to determine whether the exclusion of evidence affected a party's substantial right. *In re Walker*, 2005-Ohio-3773, ¶ 37 (11th Dist.). The offer "must be sufficient to place the reviewing court on notice of what the testimony would have been," *In re L.R.S.*, 2017-Ohio-2604, ¶ 19 (11th Dist.), must contain information specific enough to provide "'an appropriate basis for review,'" and "cannot consist of 'speculation and general descriptions.'" *Hallisy v. Hallisy*, 2023-Ohio-2923, ¶ 20 (11th Dist.), quoting *State v. Robinson*, 2020-Ohio-4880, ¶ 32-33 (3d Dist.). The reviewing court must be able to "'determine roughly what, if any, impact the testimony may have had upon the final disposition of the case.'" *Id.,* quoting *Moser v. Moser*, 72 Ohio App.3d 575, 580 (3d Dist. 1991).

{¶ 50} Here, McDonald made no offer of what Bundy's testimony would have been. However, under Evid.R. 103(A)(2), error may still be preserved for review on appeal if the substance of the excluded evidence "was apparent from the context within which questions were asked."

17.

**{¶ 51}** The question posed to Bundy was "Were you privy to conversations about [an agreement between the Fooses and Wilma]?" Trial Transcript at 458, lines 19-20. Presumably, McDonald's counsel expected Bundy to respond that Wilma said that she had an agreement with the Fooses that they would take care of her and Karen—Bundy had already said this. *Id.* at 456, lines 18-19. Beyond that, it is not apparent what Bundy would have said. It was, therefore, incumbent on McDonald to make an offer of the excluded testimony.

**{¶ 52}** Where a party fails to make an offer of proof, we review for plain error. *State v. Holz,* 2025-Ohio-2711, ¶ 24 (6th Dist.), citing *State v. Garfield,* 2011-Ohio-2606, ¶ 44. *See also McClure v. Finfrock,* 1999 WL 147937, *3 (1st Dist. Mar. 19, 1999) (observing that in the absence of an offer of excluded evidence, error is not preserved for appeal and will be reviewed only for plain error); *State v. Smith,* 2019-Ohio-2467, ¶ 42 (2d Dist.) ("[A] failure to make a proffer of evidence waives all but plain error.").

**{¶ 53}** In appeals of civil cases, the plain error doctrine is disfavored. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-23 (1997). Plain error will be found "only in the extremely rare case involving exceptional circumstances" where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."

**{¶ 54}** Here, the exclusion of Bundy's testimony did not seriously affect "the basic fairness, integrity, or public reputation of the judicial process," nor did it challenge "the legitimacy of the underlying judicial process itself." In fact, given McDonald's

18.

explanation for introducing the evidence—to rebut George Foos's testimony that the transfer of property was intended as a gift—the jury's response to Jury Interrogatory No. 2 makes clear that the exclusion of Bundy's testimony did not impact the verdict at all. *See* Jury Interrogatory No. 2 (finding that McDonald "proved by clear and convincing evidence that George and/or Rita Foos entered into an oral agreement with Wilma Jennings for the property at 0 Wapakoneta Rd., in exchange for them caring for Wilma Jennings and Karen Jennings for the rest of their lives").

{¶ 55} Accordingly, like the majority, I would find McDonald's first assignment of error not well-taken, but I would do so based on the absence of plain error.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.